### In re PANCOAST.

(District Court, E. D. Pennsylvania. April 30, 1904.)

### No. 1,912.

1. BANKRUPTCY—PROOF OF CLAIMS—AUTHENTICATION.
    Under Bankr. Act July 1, 1898, c. 541, § 20, 30 Stat. 551, 552 [U. S. Comp. St. 1901, p. 2430], a notary public is authorized to administer the oath to a proof of claim, being an officer authorized to administer oaths in proceedings in the courts of the United States by Act Aug. 15, 1876,

c. 304, 19 Stat. 206 [U. S. Comp. St. 1901, p. 662]; and such oath is sufficiently authenticated, prima facie, by what purport to be the notary's official signature and seal, although made in a different state from that in which the proceedings are pending, and without regard to the special requirements of the statutes of either state.

In Bankruptcy.    On certificate from referee.

Henry N. Wessel (Alfred Aarons, of counsel), for S. W. Downer.

J. B. McPHERSON, District Judge.    The facts upon which the question for decision arises appear from the following report of the referee:

"Henry N. Wessel, Esq., an attorney at law in Philadelphia, presented the proof of debt of S. W. Downer, of Downer, Gloucester county, New Jersey, a creditor of the above-named bankrupt, for $23.63, together with a general letter of attorney in fact to the said Henry N. Wessel and J. B. Larzalere, Esq., an attorney at law located at Norristown.  To the proof of debt was attached an itemized bill showing the consideration for the debt.  The affidavit to the proof of debt was taken before one Harry C. C. Shute, an alleged notary public of Glasboro, N. J., and there is attached his seal as follows: 'Harry C. C. Shute, Notary Public, Glasboro, N. J.'

"There is not attached to the affidavit any certificate of the court that the said Harry C. C. Shute is a notary public and in commission; neither is there attached to the certificate a statement in plain legible characters in the English language of the date upon which his commission expires.

"It is because of the omission of the certificate of the court, and also the omission of the statement of the date upon which his commission expires, that the referee refuses to file and allow the claim, the referee holding that before he shall file and allow a claim taken before a foreign notary the probate shall be 'according to the forms now or hereafter required by this statute, relative to such acknowledgment or probate.'  Act Assem. April 22, 1863, § 1; P. L. 548.  The act of April 4, 1901, § 5 (P. L. 71), requires every notary public to 'append to each certificate, attestation, or official notarial act, a statement in plain legible characters in the English language of the date upon which his commission expires.'  The notary not having complied with the laws of the state of Pennsylvania, in that he has not appended the date of the expiration of his commission as required, the referee holds that the probate is not sufficient.

"The referee further holds that, before he shall receive and file a claim probated by a foreign notary, there shall be attached a certificate of the court that the notary is a notary, and in commission, and that the mere fact that he signed himself as a notary and attaches what purports to be his seal of office is not sufficient.  For these two reasons the referee has refused to file the claim, and at the request of the said Henry N. Wessel, Esq., he certifies the facts to your honorable court for the purpose of having the matter passed upon by your honorable court, and finally adjudicated."

I am unable to assent to the correctness of this conclusion.  The power of a notary to administer the oath in question is not to be tested by the Pennsylvania statutes, but by the bankrupt act itself and by other federal legislation.    It is unnecessary to consider the laws of New Jersey, as will be seen in a moment.    Section 20 of the bankrupt act declares that "oaths required by this act, except upon hearings in court, may be administered by (1) referees, (2) officers authorized to administer oaths in proceedings before the courts of the United States or under the laws of the state where the same are to be taken.   *   *   *" Act July 1, 1898, c. 541, 30 Stat. 551, 552 [U. S. Comp. St. 1901, p. 2430].   Now, a notary public is an officer authorized to administer oaths in proceedings before the courts of the United States, for he

was expressly given such power by Act Aug. 15, 1876, c. 304, 19 Stat. 206 [U. S. Comp. St. 1901, p. 662], which provides "that notaries public of the several states, territories and the District of Columbia, be, and they are hereby, authorized to take depositions, and do all other acts in relation to taking testimony to be used in the courts of the United States, take acknowledgments and affidavits, in the same manner and with the same effect as commissioners of the United States Circuit Court may now lawfully take or do." That commissioners of the United States Circuit Court had power at that time to take proof of a debt in bankruptcy, appears from section 5076 of the Revised Statutes, which required creditors to prove their claims either before a register of the court or before a commissioner of the Circuit Court. Other acts giving a commissioner power to administer oaths are referred to in the discussion by the Supreme Court of a notary's power in this respect in United States v. Curtis, 107 U. S. 671, 2 Sup. Ct. 507, 27 L. Ed. 534.

Nothing is said in these acts about the method of certifying the oath, but, in my opinion, the signature and seal of the notary are sufficient, without more, in the first instance, whether he be a notary of this state or of some other state. There is a conflict in the decisions upon this subject, but the decided weight of authority, I think, is in favor of the view just stated. A number of the cases are cited in 21 Am. & Eng. Enc. of Law (2d Ed.) page 561. See, also, Brandenburg on Bankruptcy (3d Ed.) § 849. In Wood v. St. Paul Street Railway Co., 42 Minn. 411, 44 N. W. 308, 7 L. R. A. 149, a statement of lien was offered in evidence, sworn to before a notary public in Philadelphia, the oath being authenticated by a signature and a notarial seal. No proof was offered of the genuineness of the signature or the seal, or that the person signing the jurat was a notary, or, if a notary, that he was authorized to administer oaths in Pennsylvania. Nevertheless, the Supreme Court of Minnesota upheld the admission of the statement in evidence, giving the following reasons for their decision:

"We think these affidavits may be made in another state, before any officer authorized by the laws of such state to administer oaths. Of course, if taken in another state, they must be duly authenticated, so as to show on their face the official character of the officer, as well as his authority to administer oaths. In each of the present cases the affidavit was sworn to in Pennsylvania before a notary public of that state, who authenticated it by signing the jurat and affixing his notarial seal. If, instead of being affidavits, these had been certificates of protest or authentications of similar commercial documents, it is elementary law that the notary's seal would prove itself, without any further proof of his official character, or of his authority to do the act. A notary public is considered not merely an officer of the country where he is admitted or appointed, but as a kind of international officer, whose official acts, performed in the state for which he is appointed, are recognized as authoritative the world over. Defendant's counsel concedes that this is true as to all his acts in the way of authentication of what he terms commercial documents, but insists that outside of such matters a notary has no power, in the absence of statutory authority, to administer oaths. Although this is sometimes stated in the books as being the law, yet its correctness may well be doubted. The powers of a notary, which is a very ancient office, are largely founded on customary law. The English notaries have always considered themselves authorized to administer oaths, and whatever chance for doubt about it there might have been was set at rest by the act of 5 & 6 Wm. IV, c. 62, § 15. Brooke, Not. 20. Affidavits taken before notaries in foreign countries have uniformly

been received by the courts of England in judicial proceedings without any other proof of their official character or their authority to administer oaths than their notarial seals. Omealy v. Newell, 8 East, 364; Walrond v. Van Moses, 8 Mod. 321; Haggitt v. Iniff, 5 De Gex, M. & G. 910; Cole v. Sherard, 11 Exch. 482. It was said in Omealy v. Newell, supra, that this had been the uniform practice 'as far back as living memory could trace it.' The same practice seems to have obtained in the American courts. U. S. v. Libby, 1 Woodb. & M. 221 [Fed. Cas. No. 15,597]; Winans v. Denmead, 2 MacArthur, 475 [Fed. Cas. No. 17,860]; Tucker v. Ladd, 4 Cow. 47; Conolly v. Riley, 25 Md. 402. This practice has also long prevailed in this state, especially in the probate courts and in the proof of claims in insolvency proceedings. It is true, as counsel suggests, that these are rules of practice, as to which the courts are to some extent a law unto themselves; but the fact is important, and in point as a recognition not only of the regularity of affidavits sworn to outside the state, but also of the general power of notaries to administer oaths without proof of statutory authority to do so. As a matter of fact, in every state and territory of the Union notaries have power to administer oaths, and for the last forty years affidavits sworn to before a notary in any state of the Union, and authenticated by his notarial seal, have been admissible in all the federal courts, without any proof of their authority to administer oaths. It is true that perhaps in every state the powers of notaries, including that of administering oaths, have been regulated by statute, which, however, are largely declaratory in their nature. But whether this authority be of a statutory origin or founded on a customary law, the recognition of its existence has become so general, if not universal, that there is now no good reason why it should not be judicially recognized as one of the general powers of notaries, and affidavits authenticated by seals of notaries of other states placed on precisely the same footing as their certificates of protest or authentications of so-called commercial documents."

In my opinion, this is an excellent statement of the reasons why no further proof should, in the first instance, be required of the notary's official character than a signature and seal that purport to be his. It may be added that, as Chief Justice Tilghman remarked in Browne v. Phila. Bank, 6 Serg. & R. 484, 9 Am. Dec. 463: "It ought to be presumed, till the contrary be proved, that no man would dare to assume the office without proper authority." It is true that the notary public in that case was a Pennsylvania officer, but similar reasons, although perhaps not quite so strong, call for the application of the presumption to a notary public of another state.

The referee is directed to receive the proof of claim referred to in his certificate.