**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**John E. HOLROYD, Defendant-Appellee.**

**No. 1016, Docket 83–1451.**

United States Court of Appeals,
Second Circuit.

Argued March 28, 1984.

Decided April 18, 1984.

Deborah Wright Dawson, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Robert E. Lindsay, Washington, D.C., on brief, Salvatore R. Martoche, U.S. Atty., W.D.N.Y., Buffalo, N.Y., of counsel), for plaintiff-appellant.

Patrick J. Brown, Buffalo, N.Y. (LoTempio & Brown, Buffalo, N.Y., on brief), for defendant-appellee.

Before KAUFMAN, KEARSE and PIERCE, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Section 7206(1) of the Internal Revenue Code, 26 U.S.C. § 7206(1) (1976), proscribes the willful filing with the Internal Revenue Service of any statement, verified by a written declaration that it is made under penalty of perjury, that an individual does not believe to be accurate in every material respect.[1] We consider today the question whether a statement on an IRS form whose use is not expressly authorized by statute or regulation may serve as a basis for prosecution under that section.

Judge Curtin, in the court below, 579 F.Supp. 494, dismissed an indictment involving alleged omissions on two forms signed and subscribed by appellee John E. Holroyd. The judge based his action on the authority of the only reported case in point, *United States v. Levy*, 533 F.2d 969 (5th Cir.1976). It held that § 7206(1) applies only to statements "required by the Internal Revenue Code or by any regulation lawfully promulgated" thereunder, *id.* at 975.

---

1. 26 U.S.C. § 7206 (1976) provides in pertinent part:

 Any person who—

 (1) Declaration under penalties of perjury. —Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter ...

 shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

The 1982 amendment of this section provides that such a person shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than three years, or both.

After a careful examination of that provision, its legislative history and statutory context, we are persuaded that *Levy* erroneously narrowed the purview of § 7206(1). We conclude that the offenses stated in the indictment may be prosecuted under that section, and therefore reverse the order of the district court and remand for a trial on the indictment. Before turning to the legal issues, we set forth the relevant facts.

### I. Background

The history of this case may be briefly stated. On June 15, 1983, a grand jury in the Western District of New York returned a two-count indictment against appellee Holroyd, charging him with willfully signing, under penalty of perjury, and filing with the IRS two materially false statements, in violation of 26 U.S.C. § 7206(1). Count 1 charged that on or about February 18, 1981, Holroyd signed and submitted an IRS Collection Information Statement (Form 433–AB), containing a perjury declaration, on which he knowingly failed to state that he owned a 23-foot Bayliner 2350 Monterey Model power boat. Count 2 charged the same omission with respect to an IRS Collection Information Statement for Individuals (Form 433–A), a successor to the form previously filed, which was submitted on or about April 7, 1982. Both forms were filed with the IRS in connection with an ongoing assessment of Holroyd's ability to pay a tax liability outstanding since 1969. As a result of the false statements, the Government asserted, Holroyd's account was maintained in "uncollectable" status.

On July 25, 1983, Holroyd moved to dismiss the indictment. In ruling on the motion, the district judge noted that the Fifth Circuit's decision in *United States v. Levy, supra*, also involved felony charges under § 7206(1) based upon allegedly false statements made on IRS Form 433–AB. In attempting to divine the correct interpretation of § 7206(1), the *Levy* court acknowledged that the literal words of the statute embraced "any return, statement, or other document," with no limiting conditions. It also found the provision's legislative history inconclusive on the proper reading of those terms. The panel reasoned, however, that the "unadorned words" of the section had to be examined in their statutory context to discern their intended meaning. *Id.* at 972. After citing general principles governing the construction of criminal statutes, the court concluded that the "most tenable" interpretation of § 7206(1) would restrict its application to "any statement or document then, or thereafter, required either by the Internal Revenue Code or by any regulation lawfully promulgated by the Secretary for the enforcement of the Code." *Id.* at 973. Any broader view, the panel feared, would give IRS revenue officers excessive discretion to compel taxpayers to sign verified forms, which could in turn become the basis for felony prosecutions. Because the Government had conceded that Form 433–AB was not so required, the *Levy* court held that the indictment could not stand.

Judge Curtin noted that no case decided since *Levy* suggested that a different result was appropriate in the instant case. The judge declared that this case involved facts "almost identical" to those in *Levy*. Deciding on the authority of that case that Forms 433–AB and 433–A are not "statements" within the meaning of § 7206(1), the judge accordingly dismissed the indictment. The Government appeals, urging that the district court's order be reversed and the case remanded for trial.

### II. Discussion

We agree with Judge Curtin that this case is virtually on all fours with *Levy*, and that his dismissal order was compelled if *Levy* was properly decided. We are thus squarely presented with the question of the correctness of *Levy's* reading of the language of § 7206(1).

The words chosen by Congress in drafting § 7206(1) are, as the *Levy* court stated, unambiguous; the provision on its face applies to the making and subscribing of "*any* return, statement, or other document" (emphasis added), without qualification. Similarly, we agree that the legislative history provides no guidance on the

propriety of a broad or restrictive reading of the section. In enacting the predecessor of § 7206(1), § 3809 of the Internal Revenue Code of 1939, Congress was concerned with eliminating the oath required for tax forms and substituting a written verification on the forms themselves. It simultaneously adopted a felony sanction for fraudulent statements on verified forms, which was recodified as § 7206(1) of the Internal Revenue Code of 1954. The legislative history does not define the words "return", "statement", or "document". *See* H.Rep. No. 1337, 83rd Cong., 2d Sess. A425 (1954), *reprinted in* 1954 U.S.Code Cong. & Ad.News 4025, 4573; S.Rep. No. 1622, 83rd Cong., 2d Sess. 602 (1954), *reprinted in* 1954 U.S.Code Cong. & Ad.News 5252.

■ We draw different conclusions, however, than do our Fifth Circuit colleagues. Our analysis is constrained by a fundamental rule of statutory construction: when the express language of a statute is clear, a court will not adopt a different construction absent clear legislative history contradicting the plain meaning of the words. *See, e.g., United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Aaron v. Securities and Exchange Commission,* 446 U.S. 680, 695, 100 S.Ct. 1945, 1955, 64 L.Ed.2d 611 (1980); *In re Grand Jury Investigation of Cuisinarts, Inc.,* 665 F.2d 24, 32 (2d Cir.1981), *cert. denied sub nom. Connecticut v. Cuisinarts,* — U.S. —, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983). Given the inconclusiveness of the legislative history of § 7206(1), we can find no warrant for deviating from the words chosen by Congress, which set out the scope of the provision with patent clarity.

■ In interpreting a provision of law, "our lodestar must be the statute's funda-mental purpose." *Silver v. Mohasco Corp.,* 602 F.2d 1083, 1087 (2d Cir.1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). Section 7206(1) is part of the "hierarchy of tax offenses", *United States v. Bishop,* 412 U.S. 346, 359, 93 S.Ct. 2008, 2016, 36 L.Ed.2d 941 (1973), the proscriptions of which "singly or in combination were calculated to induce prompt and forthright fulfillment of every duty under the income tax law ...", *Spies v. United States,* 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943). Indeed, the Supreme Court has noted the "formidable line of precedent construing congressional intent to uphold the claimed enforcement authority of the Service if such authority is necessary for the effective enforcement of the revenue laws and is not undercut by contrary legislative purposes." *United States v. Euge,* 444 U.S. 707, 715–16, 100 S.Ct. 874, 880–81, 63 L.Ed.2d 141 (1980). We are of the view that the IRS's enforcement powers should not be narrowly construed, in derogation of its paramount duty to assess and collect taxes, "absent unambiguous directions from Congress." *United States v. Bisceglia,* 420 U.S. 141, 150, 95 S.Ct. 915, 921, 43 L.Ed.2d 88 (1975).

Moreover, our reading of § 7206(1) is buttressed by comparison of this section with other sections of the Code. Section 6065 requires verification of "any return, declaration, statement, or other document *required to be made under any provision of the internal revenue laws or regulations ..."* [2] (emphasis added). Had Congress meant the same limiting construction to attach to § 7206(1), it failed to so state respecting that section. Comparison with two other sections of the Internal Revenue Code is also appropriate. 26 U.S.C. § 7206(3), another of the felony sanctions accompanying § 7206(1), makes it a crime to simulate or falsely or fraudulently execute or sign "any bond, permit, entry, or

---

**2.** 26 U.S.C. § 6065, entitled "Verification of returns", provides:

 Except as otherwise provided by the Secretary, any return, declaration, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall contain or be verified by a written declaration that it is made under the penalties of perjury.

other document required by the provisions of the internal revenue laws, or by any regulation made in pursuance thereof ...." Even within the same section, then, Congress attached this limiting language when it intended to restrict a subsection's application.

In addition, 26 U.S.C. § 7207 creates a misdemeanor offense for knowingly and willfully making a materially fraudulent statement on "any list, return, account, statement, or other document ...." The terms of that section, like those of § 7206(1), do not limit its scope to documents expressly authorized by statute or regulation. And, in construing the section, the Supreme Court has intimated that the word "return" might include a "state or other non-federal return," *United States v. Bishop, supra,* 412 U.S. at 358, 93 S.Ct. at 2016, neither of which would, of course, be authorized by the Internal Revenue Code or federal regulation. The Court thus suggested that § 7207 (and by analogy, § 7206(1)) should not be impliedly limited to authorized forms.

The *Levy* court suggested that concerns about excessive delegation and abuse of authority militated toward its narrow interpretation of § 7206(1). It cited cases holding that a party taking a statement under oath must be vested with authority to do so, if perjury sanctions are to apply.[3] The court reasoned that a revenue officer requiring a taxpayer to sign and subscribe a verified form should also have express authority to do so.

It is true that no statute or regulation explicitly authorized the use of Forms 433–AB or 433–A in the circumstances at issue here.[4] In addition to the methods specifically delineated, however, the Code gives the Secretary or his delegate, the Commissioner of IRS, broad discretion to utilize "such other reasonable devices or methods as may be necessary or helpful in securing a complete and proper collection of the tax." 26 U.S.C. § 6302(b). Specifically, in connection with collecting any tax liability, revenue officers are authorized "[t]o take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry." 26 U.S.C. § 7602(3). This broad grant of power, and the scope of investigation which may be undertaken, have been liberally construed. *See, e.g., United States v. Bisceglia, supra; United States v. Continental Bank & Trust Co.,* 503 F.2d 45, 50 (10th Cir.1974).

In this case, rather than take testimony under oath, the revenue officer chose to solicit information by means of a standard IRS form. We see no reason why an officer's authority should be viewed more narrowly when the statement is made in writing rather than orally. Nor do we believe the Government's ability to punish perjury should be more extensive in the case of an oral statement. Knowing and willful falsehoods are equally obstructive of lawful governmental objectives whether communicated in written or verbal form.

There is, however, an even more fundamental response to this line of argument.

---

**3.** Of the four cases cited in *Levy* for this principle, three involved prosecutions under 18 U.S.C. § 1621 and its predecessors. *United States v. Curtis,* 107 U.S. 671, 2 S.Ct. 507, 27 L.Ed. 534 (1882); *United States v. Debrow,* 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953); *United States v. Doshen,* 133 F.2d 757 (3d Cir.1943). That section by its terms bases perjury upon an oath taken "before a competent tribunal" and "in any case in which a law of the United States authorizes an oath to be administered ...." In the fourth case, *United States v. Obermeier,* 186 F.2d 243 (2d Cir.1950), *cert. denied,* 340 U.S. 951, 71 S.Ct. 569, 95 L.Ed. 685 (1951), we relied on *Curtis* for the requirement of authority to administer an oath. Revenue officers, however, are authorized to administer oaths. *See* 26 U.S.C. § 7622; 26 C.F.R. § 301.7622–1; IRS Del-

egation Order 4, Authority to Issue Summonses, to Administer Oaths and Certify, and to Perform Other Functions: (Rev. 11) (effective 7/11/80), 1980–2 C.B. 752; (Rev. 13) (effective 3/21/82), 1982–1 C.B. 331. None of the cases discusses the scope of perjury sanctions based on fraudulent statements on verified forms. Nor do they address the question whether a requirement of express authority must be read into a perjury provision like § 7206(1).

**4.** The use of Forms 433–AB and 433–A was, however, authorized by provisions of the Internal Revenue Manual in effect at the time Holroyd signed and submitted them, namely §§ 5222.1, 5222.2 and 5612.2.

Were we to concede, *arguendo*, that the revenue officer lacked authority to utilize Forms 433–AB and 433–A, we would nevertheless reject the conclusion that Holroyd was immune from perjury prosecution under § 7206(1) for fraudulent statements made on those forms. As the Supreme Court stated in *Bryson v. United States*, 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969):

> ... [I]t cannot be thought that as a general principle of our law a citizen has a privilege to answer fraudulently a question that the Government should not have asked. Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood.

*Accord, United States v. Mandujano*, 425 U.S. 564, 577, 96 S.Ct. 1768, 1777, 48 L.Ed.2d 212 (1976); *United States v. Knox*, 396 U.S. 77, 79–80, 90 S.Ct. 363, 364–365, 24 L.Ed.2d 275 (1969). The Government's interest in combatting "such false statements as might impede the 'exercise of federal authority,'" *United States v. Leviton*, 193 F.2d 848, 851 (2d Cir.1951), *cert. denied*, 343 U.S. 946, 72 S.Ct. 860, 96 L.Ed. 1350 (1952), *quoting Terry v. United States*, 131 F.2d 40, 44 (8th Cir.1942), empowers the IRS no less than any other agency to protect itself from fraud.

We need not confront here the appropriate response to an IRS inquiry which falls outside the scope of the agency's jurisdiction. There is no suggestion in this case that the IRS is conducting a "fishing expedition" by asking questions unrelated to its lawful duty of enforcing the internal reve-

nue laws.[5] On the contrary, Holroyd submitted two official IRS forms utilized to determine the collectability of his outstanding tax liability. In such instance, lack of authority is not a defense to a charge of knowing, willful and material misstatement.

 Finally, we do not believe that our construction of § 7206(1) runs afoul of due process considerations. We fully endorse the tenet that "[c]riminal statutes must be strictly construed", *United States v. Levy*, *supra*, 533 F.2d at 973, but that principle comes into play only where uncertainty exists on the meaning of a particular statutory provision. *See, e.g., United States v. Culbert*, 435 U.S. 371, 379, 98 S.Ct. 1112, 1116, 55 L.Ed.2d 349 (1978); *Scarborough v. United States*, 431 U.S. 563, 577, 97 S.Ct. 1963, 1970, 52 L.Ed.2d 582 (1977). We are not free to restrict a statute's application, criminal or otherwise, when Congress has spoken clearly and unambiguously. *See, e.g., United States v. Dangdee*, 616 F.2d 1118 (9th Cir.1980); *United States v. Walton*, 514 F.2d 201, 204 (D.C.Cir.1975).

Nor do we think our reading of § 7206(1) denies taxpayers fair warning of the conduct which the section proscribes. Indeed, we believe that giving a literal interpretation to the provision more precisely delineates its coverage. Few taxpayers, we expect, will undertake an exhaustive survey of the Internal Revenue Code and its voluminous implementing regulations to determine whether the use of a particular mode of inquiry is expressly authorized or not.[6] Moreover, unless the form submitted "contains or is verified by a written declaration that it is made under the penalties of perjury", 26 U.S.C. § 7206(1), no prosecution may be undertaken. Any taxpayer

---

5. At a minimum, it seems unlikely that any response to an inquiry unrelated to the enforcement of the tax laws would meet the statute's materiality requirement. *See United States v. Goldman*, 439 F.Supp. 337, 344 (S.D.N.Y.1977) (statement material if capable of influencing actions of IRS in any matter within its jurisdiction).

6. We note that the Fifth Circuit has retreated somewhat from the blanket rule that only expressly authorized forms may be the basis for a perjury charge under § 7206(1). *United States v. Taylor*, 574 F.2d 232 (5th Cir.), *cert. denied*, 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978), held that the section also applies to forms which are incorporated by reference into other forms whose use has an express statutory or regulatory basis.

**1128**

who signs and subscribes such a form must be on notice that penalties may attach to fraudulent statements therein.

██ We thus conclude that 26 U.S.C. § 7206(1) means what it says on its face. It applies to any verified return, statement or other document submitted to the IRS. The indictment against Holroyd, in our view, did state a crime cognizable under that section.[7] Accordingly, we reverse the district court's order, and remand the case for trial on the indictment.

7. We do not, of course, intimate any view as to Holroyd's guilt or innocence under 26 U.S.C. § 7206(1).