UNITED STATES of America,

v.

Gregory David WERBER and John Peter Schmidt, Defendants.

No. S 90 Crim. 364 (LMM).

United States District Court, S.D. New York.

Feb. 24, 1992.

**354**

Otto Obermaier, U.S. Atty., S.D.N.Y., New York City, by Miguel A. Estrada and Andrew S. Dember, Asst. U.S. Attys., for U.S.

Gregory David Werber, pro se.

Julie A. Prag, The Legal Aid Soc., New York City, for defendant John Peter Schmidt.

## MEMORANDUM AND ORDER

McKENNA, District Judge.

### I.

The superseding indictment (the "indictment") charges defendants with:

Count One: a conspiracy, the objects of which were (i) use of unauthorized access devices in violation of 18 U.S.C. § 1029(a)(2), (ii) the violation of 18 U.S.C. 1956, (iii) the transportation in interstate commerce of a stolen Ferrari automobile in violation of 18 U.S.C. § 2314, and (iv) the sale of a stolen Ferrari automobile which had crossed a state boundary in violation of 18 U.S.C. § 2315.

Count Two: use of unauthorized access devices in violation of 18 U.S.C. § 1029(a)(2).

Count Three: violation of 18 U.S.C. § 1956(a)(1)(A)(i), (B)(i).

Count Four: the transportation in interstate commerce of the stolen Ferrari automobile in violation of 18 U.S.C. § 2314.

Count Five: the sale of the stolen Ferrari automobile which had crossed a state boundary in violation of 18 U.S.C. § 2315.

Defendants move, *inter alia*, to dismiss those portions of the indictment which allege violations of 18 U.S.C. § 1956, to wit, the second alleged object of the conspiracy, and Count Three. In Paragraph 3 of Count One, the indictment alleges that it was an object of the conspiracy that:

the defendants, and others known and unknown, knowing that the property involved in financial transactions, to wit, late model luxury automobiles purchased with counterfeit checks of organizations, represented the proceeds of some form of unlawful activity, unlawfully, wilfully and knowingly would and did conduct and attempt to conduct such financial transactions with property which was in fact the proceeds of specified unlawful activity, to wit, uttering and passing counterfeit securities of organizations in violation of Title 18, United States Code, Section 513. By these financial transactions the defendants and their co-conspirators intended to promote the carrying on of specified unlawful activity, to wit, violations of Title 18, United States Code, Section 513, and knew that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of such specified unlawful activity, in violation of Title 18, United States Code, Section 1956.

Count Three of the indictment alleges that:

the defendants, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, unlawfully, wilfully, and knowingly, did attempt to conduct and to cause to be conducted, such financial transaction, to wit, the sale of a late-model Ferrari Testarossa, with property which was in fact the proceeds of specified unlawful activity, to wit, uttering and passing counterfeit securities of organizations. By these financial transactions the defendants and their co-conspirators intended to promote the carrying on of specified unlawful activity, to wit, uttering and passing counterfeit securities of organizations in violation of Title 18, United States Code, Section 513, and knew that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of such specified unlawful activity.

Defendant Werber (*pro se*) moves, as well, for an order compelling the government to charge multiple conspiracies, in-

stead of the single conspiracy alleged in the indictment.

For the reasons set forth below, the motions referred to are denied.[1]

## II.

The grounds asserted by defendants in support of the motion to dismiss the 18 U.S.C. § 1956 allegations of the indictment are, as stated on behalf of defendant Schmidt: "(1) for failure to adequately charge the offense of money laundering under 18 U.S.C. § 1956(2) because 18 U.S.C. § 1956 as applied in this case is void for vagueness and (3) because of prosecutorial vindictiveness...." The Court understands defendant Werber to assert all of these grounds as well.

As relevant to the indictment, 18 U.S.C. § 1956 provides:

(a)(i) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

(A)(i) with the intent to promote the carrying on of specified unlawful activity; or ...

(B) knowing that the transaction is designed in whole or in part—

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; ...

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

## III.

■ The first ground urged in support of defendants' motion to dismiss the 18 U.S.C. § 1956 allegations of the indictment is that the facts alleged do not come within the meaning or intent of that statute. Most specifically, defendants urge that, on the allegations of the indictment, an automobile is not "proceeds" as that word is used in the statute. "Proceeds," defendants say, means money, or cash equivalents. Much of defendants' argument is premised on such legislative history as exists for the statute.[2] The government's argument, on the other hand, turns largely on the statute's language.

■ Faced with such conflicting approaches, it is clear that a court must look first to the language of the statute. As in *United States v. Holroyd*, 732 F.2d 1122, 1125 (2d Cir.1984), "[o]ur analysis is constrained by a fundamental rule of statutory construction: when the express language of a statute is clear, a court will not adopt a different construction absent clear legislative history contradicting the plain meaning of the words." (Citations omitted.) *See also United States v. Skinner*, 946 F.2d 176, 178 (2d Cir.1991).[3]

---

1. Defendant Werber's motion for leave to file an affidavit in support of his claim of vindictive prosecutorial misconduct, and for the government to be allowed to file a response thereto, is, however, granted. The affidavit of defendant Werber, and that of Assistant United States Attorney Estrada in response, already received, are accepted. The Court understands defendant Werber's affidavit to be filed in support of a claim of vindictive prosecutorial misconduct as a ground for dismissal of the 18 U.S.C. § 1956 allegations of the indictment.

2. As the Second Circuit pointed out in *United States v. Stavroulakis*, 952 F.2d 686, 691 (2d Cir.1992),

Congress did not submit any reports with the Anti–Drug Abuse Act of 1986, which contained the Money Laundering Control Act of 1986. *See* 1986 U.S.Code Cong. & Ad-

min.News 5393. However, two related reports provide some insight into the purpose behind the money laundering statute. *See* S.Rep. No. 433, 99th Cong., 2d Sess. (1986) ("Senate Report"); H.R.Rep. No. 855, 99th Cong., 2d Sess. (1986) ("House Report").

3. *Holroyd* and *Skinner* illustrate the initial step of the process of deciding what a statute means as described by Judge Easterbrook.

The Supreme Court reels off unanimous opinions containing a formula that is roughly: first look to the language of the statute; if that is clear then stop; if it is not clear then turn to the legislative history; if the legislative history is not clear then do whatever the agency says; and if none of the above is clear then either go with the values underlying the statute or put in a hypothetical question. Ask what the legislature that passed this bill

Here, the allegations of the indictment are, in concrete terms, that defendants uttered counterfeit bank cashier's checks to purchase automobiles, and then sold, or attempted to sell, those automobiles. The utterance of the counterfeit checks is prohibited by 18 U.S.C. § 513, and is thus a "specified unlawful activity." 18 U.S.C. § 1956(c)(7)(D). The sale of the automobiles is a "financial transaction" since it involves the movement of funds from the buyers of the automobiles to the sellers, defendants. 18 U.S.C. § 1956(c)(4)(A)(i).[4] The government contends that "the property involved in [the] financial transaction"—that is, the automobiles—represents "the proceeds" of the utterance of the counterfeit checks. Defendants contend that, on the present facts, the automobiles cannot be "proceeds" because Congress, in using the word "proceeds," meant money or cash equivalents. Alternatively, defendants contend that if "proceeds" can include "property" other than money or cash equivalents, then it can refer only to "property" which has been purchased with money or cash equivalents representing the monetary "proceeds" of a form of unlawful activity.

"Proceeds" is not among the eight terms defined in the statute. 18 U.S.C. § 1956(c)(1)–(8).

■ In the absence of a definition, there are two possible sources from which the meaning of a word used in a statute may be found. One may look to the common law, for it is a "principle of statutory construction" that " 'where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common law meaning.' " *Moskal v. United States*, —— U.S. ——, ——, 111 S.Ct. 461, 468, 112 L.Ed.2d 449 (1990) (quoting *United States v. Turley*, 352 U.S. 407, 411 (1957)). One may also follow the "fundamental canon of statutory construction ... that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979).

*Phelps v. Harris*, 101 U.S. 370 (1879), may be taken to represent the common law understanding of "proceeds." In *Phelps,* the Court said:

> The expression "to dispose of" is very broad, and signifies more than "*to sell.*" Selling is but one mode of disposing of property. It is argued, however, that the subsequent direction *to invest the proceeds* indicates that a sale was meant. But this does not necessarily follow. Proceeds are not necessarily money. This is also a word of great generality. Taking the words in their ordinary sense, a general power to dispose of land or real estate and to take in return therefor such proceeds as one thinks best, will include the power of disposing of them in exchange for other lands. It would be a disposal of the lands parted with; and the lands received would be the proceeds.

*Id.* at 380–381. *See also Black's Law Dictionary* 1084 (5th ed. 1979), defining "proceeds" as "[i]ssues; income; yield; receipts; produce; money or *articles or other thing of value* arising or obtained by the sale of property" (emphasis added), and noting that "[p]roceeds does not necessarily mean only cash or money." In *United States v. Ortiz*, 738 F.Supp. 1394, 1400 (S.D.Fla.1990), the court looked to *Phelps* and *Black's Law Dictionary* to "discern the common meaning of the term ['proceeds']."

"[O]rdinary, contemporary, common meaning," *Perrin*, 444 U.S. at 42, as represented by the parties' citations to dictionaries, is not as helpful. "[T]he total revenue produced or derived from something, as in the 'proceeds' from sale of property or some other investment," (Def. Schmidt's

---

would have done had the issue been before it explicitly. This rump legislature, sitting in the mind of the court, then gives an authoritative answer.

Frank H. Easterbrook, *The Role of Original Intent in Statutory Construction,* 11 Harv.J.L. & Pub. Pol'y 59 (1988).

**4.** The cited definition of "financial transaction" does not require that the "movement of funds" be from the defendant.

Mem. at 6 (citing 2 *Webster's Third International Dictionary* 1807 (1981)), really begs the question. *Cf.* Gov't Resp. at 11.

The fact is that if Congress had wanted to limit the reach of the statute as defendants contend, it could have used language plainly to that effect. For instance, instead of using the word "property" in 18 U.S.C. § 1956(a)(1), Congress could have used the phrase "monetary instrument or funds," as it did in 18 U.S.C. § 1956(a)(2).

The Court concludes that the word "proceeds," as used in 18 U.S.C. § 1956(a)(1), can include "property" other than money or cash equivalents, even if that "property" has not been purchased with the monetary "proceeds" of unlawful activity. The express language of 18 U.S.C. § 1956 clearly includes the conduct charged in the indictment here.

Defendants cite legislative history—including a report of the President's Commission on Organized Crime ("The Cash Connection: Organized Crime, Financial Institutions, and Money Laundering" (1984)), the Senate Report referred to in *Stavroulakis* (*see supra* n. 2), and floor statements of Senator Thurmond and Representatives Oxley, Rangel and Hayes [5]—to show that what Congress wished to prohibit was only what is indicated in the title of 18 U.S.C. § 1956—*i.e.,* "Laundering of *monetary instruments*" (emphasis added).

Even conceding, *arguendo,* that Congress' principal focus in enacting the statute was on the laundering of "dirty" *money,* and that the paradigmatic transaction envisioned may have been something like the purchase of real estate or a business with money that resulted from loan sharking or from the sale of drugs, defendants' motion to dismiss is still unsupported.

As previously noted, "the express language of [the] statute is clear," and the Court therefore cannot adopt "a different construction absent clear legislative history *contradicting* the plain meaning of the words." *Holroyd,* 732 at 1125 (emphasis added). The Court does not find that the legislative history cited by defendants in

any way *contradicts* the meaning of the words of the statute—including the meaning of the word "proceeds"—as found above. The fact that Congress (to the extent that its thinking is revealed by the cited legislative history) may have focused largely on a particular form of activity does not present a *contradiction.* "[The Supreme] Court has never required that every permissible application of a statute be expressly referred to in its legislative history." *Moskal,* 111 S.Ct. at 467. Congress' failure to mention factual situations more nearly resembling the one at issue is irrelevant. "[C]ongressional silence, no matter how 'clanging,' cannot override the words of the statute." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 495 n. 13, 105 S.Ct. 3275, 3284 n. 13, 87 L.Ed.2d 346 (1985).

■ Defendant Werber urges that the government's construction of 15 U.S.C. § 1956 be rejected under the rule that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971), citing *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). Before that rule can be applied, however, the statute must first be found to be ambiguous. In *Moskal,* the Court pointed out that it has "declined to deem a statute 'ambiguous' for purposes of lenity merely because it was *possible* to articulate a construction more narrow than that urged by the Government." 111 S.Ct. at 465. Here, as pointed out above, the express language of the statute at issue applies, by its terms, to the offense conduct charged, and there is no ambiguity to bring the rule of lenity into play.

### IV.

■ Defendants next argue that 18 U.S.C. § 1956 is void for vagueness. "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient

---

**5.** The statements of the Representatives, however, relate to the 1988 amendment of 18 U.S.C.

§ 1956, adding subsection (a)(3). *See* Def. Schmidt's Mem. at 9–10.

definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted). A vagueness claim not involving infringement of a First Amendment freedom must be considered as the statute is applied to the facts of the particular case. *Chapman v. United States,* — U.S. —, —, 111 S.Ct. 1919, 1929, 114 L.Ed.2d 524 (1991).

Defendants' arguments here parallel those discussed above in § III. Acknowledging that 18 U.S.C. § 1956 has more than once, on different facts, withstood a challenge on void-for-vagueness grounds,[6] defendants focus on the application of the word "proceeds" to automobiles obtained by the utterance of counterfeit cashier's checks. Defendants argue that "[t]his unforeseeable interpretation of the statutory language ... deprived the defendants of adequate notice that their conduct constituted money laundering," and also that "the statute as applied creates a situation in which the government will have the option arbitrarily to convert any crimes involving stolen property or contraband into the often more serious offense of money laundering." (Def. Schmidt's Mem. at 13.)

In the first place, the Court finds that the word "proceeds" is not vague. Rather, as held in § III above, the express terms of 18 U.S.C. § 1956—including the word "process"—are clear, and they cover the conduct charged.

■ Further, defendants do not contend that they were not on notice that the obtaining of automobiles with forged cashier's checks—and the sale, or attempted sale, of those automobiles—was illegal. In substance, defendants' argument is that even though they may have been on notice of the illegality of those automobile transactions, they were not on notice that such transactions, considered in combination, could constitute a violation of 18 U.S.C.

§ 1956, with its presumed potential for a harsher sentence. In other words, "whatever debate there is would center around the appropriate sentence, and not the criminality of the conduct." *Chapman,* 111 S.Ct. at 1929.

A similar question arose in *Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989). The *Fort Wayne* defendants were charged with violation of a state statute parallel to the federal RICO statute. The predicate acts charged were violations of the state's obscenity laws. In the trial court, one of the defendants had moved to dismiss the RICO charges, arguing that the RICO statute was unconstitutionally vague. The Court rejected this vagueness claim, stating that "[w]e find no merit in petitioner's claim that the Indiana RICO law is unconstitutionally vague as applied to obscenity predicate offenses. Given that the RICO statute totally encompasses the obscenity law, if the latter is not unconstitutionally vague, the former cannot be vague either." *Id.,* 109 S.Ct. at 924–925. The Court also observed that "the punishments available in a RICO prosecution are different from those for obscenity violations. But we fail to see how this difference renders the RICO statute void for *vagueness.*" *Id.* at 925 (footnote omitted).

The same reasoning applies here. The prohibition against the utterance of counterfeit cashier's checks is neither vague nor claimed to be so. So too with the prohibitions against the transportation and sale of stolen goods. Even assuming, *arguendo,* that 18 U.S.C. § 1956 were not clear, defendants would nevertheless be aware that their conduct was unlawful, and the statute would operate only to make a presumably harsher sentence available. The difference in sentencing possibilities, however, does not render 18 U.S.C. § 1956 void for vagueness.

Defendants have not shown that 18 U.S.C. § 1956 will "encourage arbitrary and selective enforcement." *Kolender,*

---

**6.** *See, e.g., United States v. Ortiz, supra; United States v. Sierra–Garcia,* 760 F.Supp. 252, 258–259 (E.D.N.Y.1991).

461 U.S. at 357, 103 S.Ct. at 1858. The statute can be applied only to conduct that comes within its express terms. The fact that defendants here (or others in the future) might have been charged under statutes carrying less severe potential penalties is not relevant. As the Court pointed out in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978):

In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."

434 U.S. at 364, 98 S.Ct. at 668 (footnote omitted) (quoting *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962)).

## V.

Defendants also argue that the indictment should be dismissed on the ground of prosecutorial vindictiveness.

In the original indictment, filed in June 1990, defendants were charged in three counts with the transportation of the Ferrari automobile and its sale, as now charged in Counts Four and Five, and with conspiracy to do so. The original indictment was superseded on October 31, 1991, after extended discovery requests and disputes, and motion practice, and apparently also plea negotiations. Defendants claim that the government added charges to the original indictment in order to penalize defendants for exercising their rights to seek discovery, engage in motion practice, and proceed to trial.

The Court cannot agree that "[t]he appearance of vindictiveness in the government's adding [the 'money laundering'] charge after all this time is unavoidable." (Def. Schmidt's Mem. at 4.)

The superseding of the original indictment does not give rise to a presumption of vindictiveness. As the Court said in *United States v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982):

A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher*, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

457 U.S. at 382, 102 S.Ct. at 2493 (footnotes omitted). *See also United States v. Eichman*, 957 F.2d 45, 47 (2d Cir.1992).

Nor have defendants shown *actual* prosecutorial vindictiveness. While it may be true that the government could have charged defendants with violation of 18 U.S.C. § 1956 on the basis of the conduct charged in the original indictment—involving the Ferrari automobile only—other portions of the superseding indictment are the result of further investigation and consideration by the government, as credibly shown in Assistant United States Attorney Estrada's affidavit. There has been no showing that the additional charges were the result either of defendants' exercise of their right to conduct a defense, whether by seeking discovery or by motion practice, or of the government's belief—not charged—that defendant Werber forged letters of government officials seeking plea bargains beneficial to himself and defendant Schmidt. The events surrounding defendant Werber's handwriting exemplars occurred after the return of the superseding indictment. Under the circumstances, the government would probably have been irresponsible not to have agents interview defendant Werber's father, and it was hardly improper to advise defendant Werber's stand-by counsel that such an interview was going to take place.

## VI.

Defendant Werber also seeks an order requiring the government to charge

three separate conspiracies, having as their objects, respectively, (1) the first, (2) the second, and (3) the third and fourth, objects of the single conspiracy charged in the indictment as now drawn. This motion is denied.

"Where there is evidence supporting an inference that there existed more than one conspiracy, the issue of single versus multiple conspiracies is a jury question." *United States v. Medina*, 944 F.2d 60, 64 (2d Cir.1991). In a case (such as the present) to be tried to the Court, the issue is then one of fact for the Court. The Court cannot know, at the present time, what the evidence will show on the issue. The government has proffered facts which, if proved, could show a single conspiracy, and defendant Werber has not shown either that these facts cannot be proved or that, if proved, they cannot support a conclusion of a single conspiracy. In such circumstances, there is no basis for requiring the government to charge three separate conspiracies. As the government concedes, (Gov't Response at 34), "proof of a conspiracy different from that charged in the indictment requires acquittal" (citing *United States v. Tramunti*, 513 F.2d 1087, 1107 (2d Cir.1975), *cert denied*, 423 U.S. 832, 96 S.Ct. 54, 55, 46 L.Ed.2d 50 (1975)). But that is a matter of proof that cannot be decided now. In short, no reason has been shown that would support interference with the government's choice to charge a single conspiracy.

Defendant Werber argues that, where multiple objects of a single conspiracy are charged, there is a danger of spillover prejudice in that evidence insufficient to prove one of the objects may prejudicially affect the trier of fact's conclusion as to another object. However, just as proper instructions in a jury case can provide adequate safeguards against spillover prejudice, so, too, can the Court avoid being affected by such prejudice here.