**LAVAN PETROLEUM COMPANY et al., Plaintiffs,**

v.

**UNDERWRITERS AT LLOYDS et al., Defendants.**

No. 71 Civ. 244.

United States District Court, S. D. New York.

Aug. 5, 1971.

Kirlin, Campbell & Keating, New York City, for plaintiffs; Louis J. Gusmano, Charles N. Fiddler, John R. Geraghty, New York City, of counsel.

Mendes & Mount, New York City, for defendant Underwriters at Lloyds; Alfred A. Lohne, William J. Russonello, New York City, of counsel.

## OPINION

COOPER, District Judge.

Plaintiffs, pursuant to 28 U.S.C. § 1447(c), seek to remand this litigation to the New York State Supreme Court. Four plaintiffs are American oil companies: ARCO Exploration, Inc., Murphy Middle East Oil Co., Iranian Sun Oil Co., (Delaware corporations), and Union Oil Company of Iran (a California corporation)—the "citizen corporations." The remaining two plaintiffs, Lavan Petroleum Co. and National Iranian Oil Co., are incorporated under the laws of Iran—the "alien corporations."

The four citizen corporations apparently formed a joint venture with National Iranian, embodied in the creation

of the Lavan corporation (each citizen corporation owning 12½% of Lavan's outstanding stock; National Iranian controlling a counter balancing ½ interest) to undertake the construction and operation of a submarine oil pipeline system in the Persian Gulf area. In furtherance of this enterprise, Lavan entered into a construction and installation contract with Oceanic Contractors Inc. (a Panamanian corporation).

A term of the construction contract required Oceanic to secure an insurance policy underwriting Oceanic's guarantee that the pipeline would be free of defective materials and workmanship and an "all risks clause" insuring against any physical loss or damage to the trunkline. In accordance with this provision, an insurance contract was entered into on July 27, 1967 between a group of English insurance underwriters (the "alien underwriters") and Oceanic, Lavan, and Lavan's associated companies.

During the operative term of the insurance policy, three separate leaks were discovered in the ninety mile trunkline. Plaintiffs, as assureds under the terms of the insurance contract,[1] now seek recovery of expenses incurred in making the necessary repairs to the trunkline. Their action was originally commenced in State Supreme Court by the filing of a complaint on December 30, 1970. Defendants' petition for removal to this Court was filed January 19, 1971.

### 28 U.S.C. § 1332

Subdivision (a) (2) of § 1332 empowers the federal court to entertain original jurisdiction over civil controversies involving a sum in excess of $10,000 between "citizens of a State, and foreign states or citizens or subjects thereof." To sustain jurisdiction under this section, it is an essential prerequisite that there be complete diversity of citizenship—that each and every party plaintiff be of different citizenship from all parties defendant. Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435 (1806). Accordingly, if this suit were brought by the citizen corporations against the alien underwriters, the case would be a proper matter of federal court attention. Complete diversity is negated however by the presence as plaintiffs of the two alien corporations.

Subdivision (a) (3) of this section vests original jurisdiction in controversies between "citizens of different States and in which foreign states or citizens or subjects thereof are additional parties." Accordingly, if the citizen corporations were involved in litigation with citizens of different states, the presence of the two alien plaintiff corporations would be jurisdictionally immaterial. However, the named defendants are not citizens of different states; they are citizens of a foreign country. Therefore this section is likewise inapplicable.

Defendants' novel proposition to transform (a) (2) jurisdiction by engrafting to it section (3)'s clause concerning foreign parties, effectuating thereby a consideration of the alien corporations as merely "additional parties" in an action brought by citizens against aliens, must be rejected. There is no legislative or judicial support for so expanding (a) (2)'s basis of jurisdiction, Cf. 1 Moore's, Federal Practice, ¶ 0.60 [3], [8] (2d ed.). Further, such a reading would do violence to the clear wording of that statute. The concept of complete diversity in such litigation would be vitiated, for the presence of a single citizen in an action against defendant aliens would serve as a basis for sustaining jurisdiction.

### 28 U.S.C. § 1441(c)

Although this Court is without original jurisdiction, defendants may successfully remove an action commenced

---

1. Also named as a defendant in the complaint was Oceanic. The petitioning defendants (the alien underwriters) question Oceanic's status as a co-defendant.

For purposes of determining the motion now before us, Oceanic's alignment is immaterial.

in state court involving such mixed party alignment, in certain circumstances pursuant to 28 U.S.C. § 1441. Subdivision (c) authorizes the removal of an entire case to the federal courts if included within the action is a separate and independent claim which if sued upon alone would have been removable.

■ It is undeniable that that portion of the controversy involving the four citizen corporations and the alien underwriters "if sued upon alone" would properly be removable as an adversary matter between citizens of various states and foreign subjects. If defendants are to succeed in sustaining removal, it is incumbent upon them to establish, as well, that this isolated "removable" segment of the litigation comprises separate and independent causes of action, within the meaning of § 1441(c), from those asserted by the two alien plaintiff corporations.

■ Prior to the enactment in 1948 of § 1441(c) (it superseded 28 U.S.C. § 71), the presence of a "separable controversy" constituted an adequate basis for removal of complex litigation. In American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951), the leading Supreme Court opinion construing this statutory provision, the court emphasized that a primary factor underlying Congressional adoption of the "separate and independent" standard in 1948 "was to limit removal from state courts." 341 U.S. at 11, 71 S.Ct. at 538. In *Finn*, a Texas citizen sought recovery for damages to property upon an insurance policy against two non-Texas insurance companies and their local agent, a Texas resident. In remanding the litigation, the Court concluded that:

> "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of

transactions, there is no separate and independent claim or cause of action under § 1441(c).

\*   \*   \*   \*   \*   \*

> The allegations in which Reiss [the non-diversity defendant] is a defendant involve substantially the same facts and transactions as do the allegations \* \* \* against the foreign insurance companies. It cannot be said that there are separate and independent claims for relief as § 1441(c) requires."

In seeking to escape Finn's stringent[2] definition of a separate and independent cause of action, defendants rely heavily upon this court's determination in Herrmann v. Braniff Airways, Inc., 308 F. Supp. 1094 (S.D.N.Y.1969), that multiple claims, although arising out of a common transaction or occurrence, may satisfy § 1441(c) requisites if asserted by multiple plaintiffs.

Although the court in *Herrmann* declined to remand the action and found that the application of

> "*Finn's* language \* \* \* is not appropriate because *Finn* and almost all reported diversity cases involve a single plaintiff who has made related claims against *multiple defendants* in a single case, whereas here we are concerned with *multiple plaintiffs* who have joined their individual claims in a single suit against a single defendant" (308 F.Supp. at 1098),

it did not imply that the mere presence of multiple plaintiffs would necessarily involve separate and independent claims. The accompanying essential element underlying *Herrmann's* holding was that the right asserted by each plaintiff was of "separate wrongful acts, namely the wrongful invasion of each decedent's right of bodily safety." 308 F.Supp. at 1099. Likewise in Scheideler v. Jones,

---

2. Wright, in his authoritative treatise on Federal Courts, at 117–118, describes the breadth of the *Finn* holding: "Few, if any, diversity cases can properly be removed under this statute in light of the construction placed upon it in the *Finn* case." Accord, 1 Barron & Holtzoff Federal Practice and Procedure § 105, p. 494 (1960). Despite Wright's ominous forecasts, a number of courts have sustained removal of diversity suits. See 1 A Moore's, *supra*, ¶ 0.163 [4–5] and cases cited therein.

105 F.Supp. 726 (S.D.N.Y.1952), the court viewed the "claim of one plaintiff for damages to his reputation is so peculiarly personal as to be clearly 'separate and independent' from the similar claims of each of the other plaintiffs." [3] 105 F.Supp. at 727. Accordingly, while we fully concur with the cogent reasoning expressed in *Herrmann* and *Scheideler*, both are distinguishable, for plaintiffs in the instant matter do not assert separate wrongful acts violative of their individual rights. "Realistically * * there is a single claim." Schwartz v. Employers Mutual Liability Ins. Co., 170 F.Supp. 194 (S.D.N.Y.1959).

Unlike the fortuity linking *Herrmann's* ill fated passengers or the reviled objects in *Scheideler's* remarks, the plaintiffs through Lavan, a corporation in the control of which each participated, entered into a single insurance policy to protect their joint interest in the trunkline. The three causes of action alleged in the complaint arise out of a single series of "interlocking transactions" Charles Dowd Box Co. v. Fireman's Fund Ins. Co., 303 F.2d 57 (1st Cir. 1962) and are aimed at remedying a single wrong suffered by plaintiffs, "depriving them of the proceeds of insurance coverage." Ramapo Rockland Corp. v. Merchants & Business Men's Mutual Insurance Co., 156 F.Supp. 311 (S.D.N.Y. 1957); Rosen v. Rozan, 179 F.Supp. 829 (D.Mont.1960).

Additionally, *Finn* instructs that when determining this issue the court must "look to the plaintiff's pleading, which controls." 341 U.S. at 14, 71 S.Ct. at 540; Pullman Co. v. Jenkins, 305 U.S. 534, 538, 59 S.Ct. 347, 83 L.Ed. 334 (1939). Whereas in *Herrmann* the complaint sets forth eight separate causes of action, the first four relating exclusively to the recovery of damages arising from Herrmann's wrongful death and the balance solely concerning the demise of another passenger joined in the suit, here the six plaintiffs join in seeking recovery under each of the three causes of action. A further consideration, the eventual determination of damages, likewise mandates our conclusion that these claims are neither separate nor independent. In *Herrmann* "as in most actions involving individual claims by multiple plaintiffs, all the plaintiffs allege separate and varying claims for damages, thus requiring the presentation of different offers and quanta of proof depending on the particular plaintiff and resulting in individual judgments." 308 F.Supp. at 1100. The loss allegedly recoverable under the contract of insurance is $1,373,566.59, an amount presumably to be divided among the plaintiffs according to their respective interests in the venture.

## Waiver

Independent of the propriety of removal of this action pursuant to § 1441 (c), plaintiffs contend that defendants relinquished any right to removal when they entered into an agreement according the assureds the right to select the court of competent jurisdiction in which all disputes growing out of the insurance policy were to be litigated. The pertinent provision of the insurance agreement provided:

"It is agreed that in the event of the failure of Underwriters herein to pay any amount claimed to be due hereunder, Underwriters herein, at the request of the Assured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such Court."

In General Phoenix Corp. v. Malyon, 88 F.Supp. 502 (S.D.N.Y.1949), this Court had occasion to pass upon the validity of an identical service of suit provision. In directing a remand of the

---

3. The court reached this conclusion although each of the alleged defamatory statements affected every plaintiff.

litigation in a factual surrounding leaving no "doubt that this court has jurisdiction," the Court concluded:

> "Unquestionably, the privilege of removal may be waived. A waiver may occur in numerous ways such as a failure to make a timely application, answering in the State Court, or any other fashion indicating submission to jurisdiction. Of course, the waiver is always spelled out from occurrences after commencement of suit. Whether parties may stipulate in advance to restrict removal is highly doubtful, for such an understanding would run counter to the settled idea that bargains limiting parties to particular tribunals are illegal. However, the clause in suit is not such a bargain. It merely restricts the defendant to the Court in which suit is first begun against it, be it Federal or State."

Defendants reliance on Davila v. Hilton Hotels International, Inc., 97 F.Supp. 32 (D.P.R.1951), as restricting *Phoenix's* application to situations where defendant has affirmatively appeared in the state court proceeding, is misplaced. The absence of a service of suit clause in *Davila* is the more likely explanation for that court's omitting the last sentence of the above quotation in its discussion of *Phoenix*.

Although defendants' contention of the unenforcibility of this "bargain" is not without some support, see e. g. Roberts v. Lexington Insurance Co., 305 F.Supp. 47 (E.D.Nth.Car.1969), we reaffirm this district's prior disposition. See also Oil Well Service Co. v. Underwriters At Lloyd's London, 302 F.Supp. 384 (C.D. Cal.1969) particularly where, as here, there is no indication that defendants entered into the contract under duress or that the contractual clause was in any way unreasonable. Euzzino v. London & Edinburgh Ins. Co., 228 F.Supp. 431 (N.D.Ill.1964); Cf. National Equipment Rental, Ltd. v. Reagin, 338 F.2d 759 (2d Cir. 1964).

*Disposition*

For the reasons set forth above, plaintiffs motion to remand this litigation to the Supreme Court of the State of New York, County of New York is granted. This controversy is not a proper subject of removal jurisdiction pursuant to 28 U.S.C. § 1441(c). Defendants surrendered their right to seek removal by their acceptance of the contract clause affording plaintiffs the option of selecting the forum to litigate this dispute. Plaintiffs' application for the payment of just costs expended in prosecuting its motion to remand is denied.

Settle order on notice.