**.LLOYDS BANK PLC, Plaintiff,**

v.

**David D. NORKIN and Friema Norkin, Defendants.**

**No. 91 Civ. 5513 (LMM).**

United States District Court, S.D. New York.

April 1, 1993.

Linda Wintner, of Schulte Roth & Zabel, New York City, for plaintiff Lloyds Bank Plc.

Edward W. Zawacki, New York City, for defendant David D. Norkin.

Philip L. Friedman, New York City, for defendant Friema Norkin.

**1.** The Rail Yard is a twenty-two acre parcel located in the Bronx, New York which Britestarr intended to develop as a manufacturing site for

MEMORANDUM AND ORDER

McKENNA, District Judge.

**1.**

Before this Court is the motion of plaintiff Lloyds Bank Plc ("Lloyds" or "Plaintiff"), pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, for summary judgment against defendant David D. Norkin ("Mr. Norkin") and for partial summary judgment against defendant Friema Norkin ("Ms. Norkin") (the Norkins are collectively referred to as "Defendants") on the first and only count of the Amended Complaint and on the counterclaims asserted by Mr. Norkin. Plaintiff further seeks to limit discovery to the amount recoverable from Ms. Norkin. Defendants oppose Plaintiff's motion on various grounds including, *inter alia,* lack of subject matter jurisdiction, lack of consideration, inadequate pretrial discovery, and existence of factual disputes. For the reasons set forth below, the Complaint is dismissed for lack of subject matter jurisdiction.

**2.**

This action is based on personal guarantees of payment made by Defendants to secure a $4.45 million loan (the "Loan") from Lloyds to Britestarr Homes, Inc. ("Britestarr"). The Loan was made on September 7, 1988 as part of a larger contemplated financing package to finance the purchase of the Oak Point Rail Yard (the "Rail Yard").[1] (Mr. Norkin's Rule 3(g) Statement ¶ 1.) The Loan was made pursuant to the terms of a Mortgage Note secured by a Mortgage by Britestarr to Lloyds. (Exs. A and C to Notice of Mot.). In addition, Defendants executed a Guarantee of Payment and Performance (the "Guarantee") also dated September 7, 1988. (Ex. A to Am.Compl.)

According to Mr. Norkin, shortly after Britestarr had purchased the Rail Yard and begun to remove excess landfill, its equipment broke down, preventing removal of debris from the site. Thereafter, the City of New York ordered the site closed until suffi-

modular housing. (Mr. Norkin's Rule 3(g) Statement ¶ 1.)

cient debris was removed. (Mr. Norkin Aff. in Opp'n ¶ 21.) Mr. Norkin further alleges that in order to comply with the City's order, Britestarr required additional financing. At this point, according to Mr. Norkin, "Lloyds refused to advance additional monies" (*id.*) and "ultimately refused to consent to [a loan from The Middle East Bank], leaving Britestarr unable to conduct business and to pay Lloyds." (*Id.* ¶ 22.) It is further alleged that Lloyds "fostered Britestarr's default by not consenting to the mortgage by The Middle East Bank ... refus[ing] to cooperate in any reasonable way to enable Britestarr to reopen the operation." (*Id.* ¶ 23.)

It is uncontested that the Loan matured in December, 1989. According to Plaintiff, Britestarr made no Loan payments between August 1, 1989 and November 13, 1989. On November 13, 1989, Plaintiff contends, it sent Britestarr written notice of default. Plaintiff further alleges that the default was never cured. (Pl.'s Rule 3(g) Statement ¶ 19.) In response to Mr. Norkin's allegation that it unreasonably refused to cooperate with The Middle East Bank, Lloyds asserts that The Middle East Bank's loan commitment of January, 1990 was subject to certain conditions, one of which required a statement by Lloyds that the Loan was not in default. (*Id.* ¶ 22.)

### 3.

Subject matter jurisdiction is premised on diversity pursuant to 28 U.S.C. § 1332. Plaintiff Lloyds is a foreign banking corporation incorporated under the laws of the United Kingdom, with its principal place of business located at 71 Lombard Street, London. Pursuant to Article 5 of the New York Banking Law,[2] Lloyds is licensed to (and does) maintain a branch banking office in the City of New York. (Pl.'s Rule 3(g) Statement ¶ 1.) Lloyds' New York branch office does not affect this Court's jurisdictional analysis. "[A]n alien corporation's *worldwide* principal place of business, and not its principal place of business within the United States is controlling" for jurisdictional purposes. *Bailey v. Grand Trunk Lines New England,* 805 F.2d 1097, 1101 (2d Cir.1986), *cert. denied,* 484 U.S. 826, 108 S.Ct. 94, 98 L.Ed.2d 54 (1987). Mr. Norkin is a citizen of the State of Connecticut.[3] Ms. Norkin is a permanent resident alien and a domiciliary of New York.[4] (Am.Compl. ¶ 3.) It is not disputed that the amount in controversy exceeds $50,000, exclusive of interest and costs.

Because Ms. Norkin is a permanent resident of the United States and resides in New York, it is alleged that she is a citizen of New York for purposes of subject matter jurisdiction pursuant to the Judicial Improvements and Access to Justice Act (the "Judicial Improvements Act"). The Judicial Improvements Act amended 28 U.S.C. § 1332(a) (last sentence) to read as follows:

> For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.[5]

Ms. Norkin, a signatory to the Guarantee assertedly jointly and severally liable to Lloyds, is not a dispensable party and, therefore, may not be dropped from the action pursuant to Rule 21 of the Federal Rules of Civil Procedure.[6]

### 4.

Under a literal application of 28 U.S.C. § 1332(a), amended as set forth above, this Court plainly has subject matter jurisdiction:

---

**2.** N.Y.Banking Law § 201 (McKinney 1990).

**3.** Mr. Norkin has filed a statement pursuant to Local Rule 3(g) which does not dispute his Connecticut citizenship. "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." S.D.N.Y.Civ.R. 3(g).

**4.** Ms. Norkin has not filed a statement pursuant to Local Rule 3(g) to controvert Plaintiff's statement that she is an alien domiciled in New York.

**5.** Pub.L. No. 100–702, 102 Stat. 4642, 4646 (codified at 28 U.S.C. § 1332(a) (1988)). For a brief history of the Judicial Improvements Act, see *Arai v. Tachibana,* 778 F.Supp. 1535, 1538–40 (D.Haw.1991).

**6.** "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed.R.Civ.P. 21.

under that section, the action is brought by an alien (Lloyds) against a citizen of Connecticut (Mr. Norkin) and a citizen of New York (Ms. Norkin, by virtue of section 1332(a)), so that complete diversity exists. It is equally plain, however, that prior to the amendment the Court would not have had subject matter jurisdiction, under the rule that "[d]iversity jurisdiction under 28 U.S.C. § 1332 is defeated by the presence of aliens both as plaintiffs and as defendants." *IIT v. Vencap, Ltd.,* 519 F.2d 1001, 1015 (2d Cir. 1975) (citation omitted).

Several commentators, however, have raised the question of the constitutionality of section 1332(a) as amended. Paul M. Bator *et al., Hart and Wechsler's The Federal Courts and the Federal System* 200 (3d ed. Supp.1992); Charles A. Wright *et al.,* 13B *Federal Practice and Procedure* § 3604, at 77 (Supp.1992); David D. Siegel, *Changes in Federal Jurisdiction and Practice under the New Judicial Improvements and Access to Justice Act,* 123 F.R.D. 399, 408–09 (1989). One District Court, on the other hand, has found that the constitutionality of section 1332(a) as amended, as applied to facts essentially similar to those presented here— alien plaintiffs against a citizen of a state and permanent resident aliens domiciled in a state—need not be addressed, since Congress did not intend section 1332(a) as amended to apply to such a situation. *Arai v. Tachibana,* 778 F.Supp. 1535, 1542–43 (D.Haw.1991).

In view of the questions thus raised and the obligation of federal courts to examine, *sua sponte* if need be, their subject matter jurisdiction, see *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701, 102 S.Ct. 2099, 2103, 72 L.Ed.2d 492 (1982) and Fed.R.Civ.P. 12(h)(3), the Court, by Memorandum and Order dated

October 5, 1992, invited the parties to brief the issue, *inter alia,* of the constitutionality of the last sentence of section 1332(a) as amended and other issues relevant to subject matter jurisdiction.

The Court now concludes that the question of the constitutionality of the amendment as applied to this case need not be reached, since Congress did not intend the amendment to confer subject matter jurisdiction over an action brought by an alien against a citizen of a state and a permanent resident alien domiciled in a state. Since Congress did not so intend, however, and since established judicial doctrine requires dismissal absent application of the amendment, the action must be dismissed for lack of subject matter jurisdiction.

As background to a consideration of Congress' intent, a brief review of the alienage jurisdiction, the complete diversity rule, and their combination in a line of cases concluding that an action brought by an alien against a citizen of a state and another alien must be dismissed for lack of subject matter jurisdiction, is necessary.

### 5.

■ It is clear that Article III of the Constitution does not give Congress the power to grant the federal courts jurisdiction over an action between two aliens. *See, e.g., Mossman v. Higginson,* 4 U.S. (4 Dall.) 12, 14, 1 L.Ed. 720 (1800) ("the legislative power of conferring jurisdiction on the federal Courts, is, in this respect, confined to suits between citizens and foreigners"); [7] *Jackson v. Twentyman,* 27 U.S. (2 Pet.) 136, 136, 7 L.Ed. 374 (1829) ("the judicial power was not extended to private suits, in which an alien is a party, unless a citizen be the adverse party"); [8] *Joseph Muller Corp. v. Societe Anonyme de Gerance et d'Armement,* 451 F.2d 727, 729 (2d Cir.1971) ("all parties are aliens,

7. *Mossman* turned, however, on the failure of the plaintiff to describe the citizenship of the defendants. Julius Goebel, Jr., 1 *History of the Supreme Court of the United States (Antecedents and Beginnings to 1801)* 685 & n. 78 (1971).

8. *Jackson,* as well, turned on a failure to describe the citizenship of the defendants, which "was indispensable ... in order to show on the record the jurisdiction of the court." *Id.* "[T]he Supreme Court under Chief Justice Marshall seems

to have preferred strict standards for the allegations of diversity, and to have applied the requirements of the Judiciary Act of 1789 in a way that diversity jurisdiction was required to be shown on the face of the pleadings before the court might proceed." George L. Haskins, 2 *History of the Supreme Court of the United States (Foundations of Power: John Marshall, 1801– 1815)* 617 (1981) (footnote omitted).

and neither the constitutional nor statutory grants of jurisdiction include such a suit"), *cert. denied,* 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972). In *Verlinden B.V. v. Central Bank of Nigeria,* 647 F.2d 320, 325 (2d Cir.1981), *rev'd on other grounds,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983), the court explained that Article III

> provides, *inter alia,* that the judicial power shall extend to "Controversies ... between a State, the Citizens thereof, and foreign States, Citizens or Subjects." The phrase nowhere mentions a case between two aliens. Accordingly, Congress is powerless to confer jurisdiction over such suits, at least on the basis of the diversity grant, ... and Verlinden must look elsewhere in Article III for language to support its suit.

647 F.2d at 325 (footnotes and citations omitted).

It is equally clear that, at least since *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806),[9] the federal courts have followed the complete diversity rule, that "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978).

Combining these two rules—that the Constitution does not confer jurisdiction over actions by aliens only against aliens only, and the complete diversity requirement—the courts have regularly found that there is no subject matter jurisdiction over actions brought by an alien against another alien *and* a citizen of a state. *See, e.g., Ex Parte Edelstein,* 30 F.2d 636, 638 (2d Cir.) (Hand, J.) ("concededly an alien may not sue an alien in a federal court"), *cert. denied,* 279 U.S. 851, 49 S.Ct. 347, 73 L.Ed. 994 (1929); *IIT v. Vencap,* 519 F.2d at 1015 ("Diversity jurisdiction under 28 U.S.C. § 1332 is defeated by the presence of aliens both as plaintiffs and as defendants") (citation omitted); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 629 F.2d 786, 790 (2d Cir.1980) ("We have held that the presence of aliens on two sides of a case destroys diversity jurisdiction"), *cert. denied,* 449 U.S. 1080, 101 S.Ct.

863, 66 L.Ed.2d 804 (1981); *Fosen v. United Technologies Corp.,* 484 F.Supp. 490, 495 (S.D.N.Y.) ("plaintiffs are Norwegian, the defendant ANA is Japanese; the fact that other defendants in this suit are citizens of a state does not cure this jurisdictional defect") (citation omitted), *aff'd,* 633 F.2d 203 (2d Cir.1980); *Ed and Fred, Inc. v. Puritan Marine Insurance Underwriters Corp.,* 506 F.2d 757, 758 (5th Cir.1975) ("applied to suits brought by aliens, the rule of complete diversity would divest the district court of Section 1332 jurisdiction"); *Eze v. Yellow Cab Co. of Alexandria,* 782 F.2d 1064, 1065 (D.C.Cir. 1986) ("under long-held precedent, diversity must be 'complete.' ... A diversity suit in line with the *Strawbridge* rule, may not be maintained in federal court by an alien against a citizen of a state and a citizen of some other foreign country").

This is not to say that dismissal of an action brought by an alien against another alien and a citizen of a state is necessarily constitutionally mandated. Judge Hand, in *Edelstein,* suggests otherwise. 30 F.2d at 638. The complete diversity rule previously mentioned, and a component of the rule applied in the line of cases cited, is itself "based on the diversity statute, not Article III of the Constitution." *Newman–Green, Inc. v. Alfonzo–Lorrain,* 490 U.S. 826, 829 n. 1, 109 S.Ct. 2218, 2221 n. 1, 104 L.Ed.2d 893 (1989) (citing *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 530–31, 87 S.Ct. 1199, 1203, 18 L.Ed.2d 270 (1967)). This Court, however, need not reach the issue whether Congress could grant jurisdiction of a case brought by an alien against a citizen of a state and another alien.

It follows from what has been said that, without some exceptional grant of jurisdiction, Lloyds, an alien corporation, would be barred from suing Ms. Norkin, also an alien, in federal court; the fact that Mr. Norkin is a citizen of Connecticut would be of no avail. The presence of aliens on both sides of the controversy would require that the action be dismissed. Plaintiff could not remedy this jurisdictional defect by alleging that Ms. Norkin is merely an additional party pursu-

---

**9.** The Judiciary Act then in force required that "each of the persons concerned in that interest must be competent to sue, or liable to be sued." *Id.* at 267.

ant to subdivision (a)(3) of section 1332 of Title 28. *Lavan Petroleum Co. v. Underwriters at Lloyds*, 334 F.Supp. 1069, 1071 (S.D.N.Y.1971). According to the Amended Complaint, both Mr. Norkin and Ms. Norkin executed the Guaranty. (Am. Compl.Ex. A.) Further, both Defendants are allegedly jointly and severally liable. (Pl.'s Mem. of Law at 6.)

The last sentence of 28 U.S.C. § 1332(a), added by the Judicial Improvements Act, however, if followed according to its terms, would provide subject matter jurisdiction. Pursuant to this statute, Ms. Norkin would be "deemed" to be a citizen of New York, and "complete diversity" would exist: Lloyds, an alien, would then be suing Mr. Norkin, a Connecticut citizen, and Ms. Norkin, a New York citizen.[10] Whether Congress intended such a result, or knew that the language it chose to use in the amendment could be read to support such a result, is another question.

### 6.

When "the terms of a statute [are] unambiguous, judicial inquiry is complete, except in 'rare and exceptional circumstances.'" *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984) (citation omitted); *see also Patterson v. Shumate*, —— U.S. ——, ——, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519 (1992) ("courts 'appropriately may refer to a statute's legislative history to resolve statutory ambiguity' ... [unless] the clarity of the statutory language at issue in this case obviates the need for any such inquiry") (citation omitted); *United States v. Werber*, 787 F.Supp. 353, 355 n. 3 (S.D.N.Y. 1992) ("first look to the language of the statute; if that is clear then stop; if that is *not* clear *then* turn to the legislative history") (quoting Frank H. Easterbrook, *The Role of Original Intent in Statutory Construction*, 11 Harv.J.L. & Pub.Pol'y 59, 59 (1988) (emphasis added)). Here, the Court is faced with an exceptional circumstance—to find

subject matter jurisdiction, the Court must conclude that Congress abandoned the rule of complete diversity, enunciated nearly two hundred years ago in *Strawbridge* and regularly applied since to, *inter alia*, actions with aliens on both sides, but did so without comment.

Apart from the improbability of Congress so acting, the Court, while confronted with seemingly clear statutory language, has been provided with little guidance as to the intent of the amendment of section 1332(a). The amendment is subject to several possible interpretations, among them that Congress may have intended to deny access to the federal courts in cases between citizens and permanent resident aliens domiciled in the same state, or that Congress may have intended to modify the rule of complete diversity in favor of minimal diversity to the extent permitted by the Constitution. It appears to this Court most likely that Congress intended only to "destroy diversity in cases involving American citizens and permanent resident aliens domiciled in the same state." Charles A. Wright *et al.*, 13B *Federal Practice and Procedure* § 3604, at 78 (Supp.1992).

While sparse, the Judicial Improvements Act's legislative history is of some help. In the first place, in enacting the Judicial Improvements Act, Congress did have in mind the reduction of the non-federal question caseload of the federal courts. The House Report on the bill that resulted in the Judicial Improvements Act states that "[t]he provisions of this subtitle make amendments to reduce the basis for Federal court jurisdiction based solely on diversity of citizenship." H.R.Rep. No. 889, 100th Cong., 2d Sess. 44 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6005. *See Arai*, 778 F.Supp. at 1538. Against such a background, it is impossible to imagine that Congress would, silently, expand the non-federal question jurisdiction.[11]

---

10. As an aside, the Court notes that the Judicial Improvements Act does not purport to confer United States citizenship on alien permanent resident aliens, although Congress has the constitutional authority to regulate naturalization.

11. "We are certain that Congress would not have altered an important traditional policy ... without articulating its will explicitly." *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 34 (2d Cir.1981) (citation omitted), *cert. denied*, 460 U.S. 1068, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983).

Further, there is evidence of Congress' intent in adding (late in the process, see *Arai*, 778 F.Supp. at 1539 n. 6) the language that is now the last sentence of 28 U.S.C. § 1332(a).

28 U.S.C. § 1332(a)(2) currently gives the district courts diversity jurisdiction over actions between citizens of a State and citizens or subjects of a foreign state. Diversity jurisdiction exists under this provision even though the alien may have been admitted to the United States as a permanent resident. As any review of the immigration statistics indicates, large numbers of persons fall within this category.

There is no apparent reason why actions between persons who are permanent residents of the same State should be heard by Federal courts merely because one of them remains a citizen or subject of a foreign state.

134 Cong.Rec. S31,055 (daily ed. Oct. 14, 1988) (statement by Sen. Heflin).[12] No other evidence has been offered to the Court to indicate what Congress had in mind in enacting the last sentence of 28 U.S.C. § 1332(a), nor has any evidence been proffered to the effect that Congress intended in any way to broaden diversity jurisdiction.

 The actual language of 28 U.S.C. § 1332(a) as amended would require that in the instant case this Court deem Ms. Norkin a citizen of the State of New York, thus creating complete diversity by abrogating the established rule that subject matter jurisdiction does not exist where an alien is a plaintiff and an alien is a defendant. Such a result goes beyond the jurisdiction conferred by prior acts of Congress as consistently construed by the courts. There is no evidence that Congress in any way intended to abrogate this rule; rather, the amendment of 28 U.S.C. § 1332(a) clearly appears to have been intended only to eliminate subject matter jurisdiction of cases between a citizen and an alien living in the same state. Consequently, the Court holds that subject matter jurisdiction does not exist and the case is dismissed.

**7.**

For the foregoing reasons, Plaintiff's motion for summary judgment is denied (without prejudice) and the case is dismissed for want of subject matter jurisdiction. Plaintiff's request for sanctions and for costs, including attorney's fees, is denied. No costs.

SO ORDERED.

---

**12.** "There is no reason why actions involving persons who are permanent residents of the United States should be heard by federal courts merely because one of them remains a citizen or subject of a foreign state or has not yet become a citizen of the United States. Accordingly, the Conference agreed to recommend that Congress amend 28 U.S.C. 1332(a) to treat a permanent resident alien as a citizen of the state of his or her domicile." *Report of the Proceedings of the Judicial Conference of the United States* 77 (Sept. 14, 1988).