PRIORITY RECORDS, INC., Plaintiff,

v.

BRIDGEPORT MUSIC, INC. and Tercer
Mundo, Inc., Defendants.

No. 94 Civ. 0389 (LMM).

United States District Court,
S.D. New York.

Dec. 5, 1995.

727

James E. Daniels, Hall, Dickler, Lawler, Kent & Friedman, New York City, for Priority Records, Inc.

Joseph Della Maria, Rothschild, Barry & Meyers, Chicago, IL, for Bridgeport Music, Inc.

Neville Johnson, Neville L. Johnson, Los Angeles, CA, for Tercer Mundo, Inc.

*MEMORANDUM AND ORDER*

McKENNA, District Judge.

**1.**

Defendant Bridgeport Music, Inc. ("Bridgeport") moves for reconsideration or reargument of this Court's Order and Memorandum of July 19, 1994 (the "Order").[1] Reargument is granted; on reargument the Court adheres to the Order except to the extent that it is modified or clarified below.

**2.**

■ Bridgeport, in passing, raises a question as to the Court's subject matter jurisdiction over "any issue other than who had the right to the interpled funds ·or the relief sought by Bridgeport, since the court's jurisdiction under 28 U.S.C. § 1335 extends only to a determination of who owns the interpled

---

1. Bridgeport has also moved (i) for leave to take discovery and (ii) for leave to add Leon Friedman, Esq., a member of the bar of this Court, as additional counsel. The first of these motions is denied insofar as it seeks the taking of discovery in connection with the motion for reargument or reconsideration; the second (although not necessary) is granted.

funds, and no other jurisdictional basis was alleged by Priority." (Bridgeport Mem. in Supp. of Mot. for Reconsideration or Reargument, Aug. 18, 1994, at 6 n. 2 (citation omitted)). Neither plaintiff Priority Records, Inc. ("Priority") nor defendant Tercer Mundo, Inc. ("Tercer") appears to have commented on this point. In any event, subject matter jurisdiction must always be examined by a federal court, *sua sponte* if need be. *Lloyds Bank PLC v. Norkin*, 817 F.Supp. 414, 416 (S.D.N.Y.1993).

■■■ Priority's Complaint for Interpleader and Declaratory Relief (the "Complaint") premises subject matter jurisdiction on 28 U.S.C. § 1335.[2] Subject matter jurisdiction over this action pursuant to that statute is not challenged, and the requirements of the statute are satisfied in that the amount in controversy exceeds $500, the claimants—Bridgeport and Tercer—are of diverse citizenship,[3] and Priority has deposited the funds at issue with the Court. 28 U.S.C. § 1335.

Bridgeport has thus raised the question of how far the Court's subject matter jurisdiction extends. There can be no doubt that the Court can determine such issues as are necessary to the ultimate determination of the rights, as between the parties, to the funds presently on deposit with the Court. But does it extend further?

There is, certainly, some confusion in the case law in this area. *See* 7 Wright, Miller & Kane, *Federal Practice & Procedure*, at 591–600 (§ 1715) (1986). There is some authority to support Bridgeport's view that the Court

should limit itself in the present action "only to a determination of who owns the interpled funds." (Bridgeport Mem. in Supp. of Mot. for Reconsideration or Reargument, Aug. 18, 1994, at 6 n. 2.) In *Humble Oil & Ref. Co. v. Copeland*, 398 F.2d 364, 368 (4th Cir.1968), cited by Bridgeport (*id.*), the court said that "[i]nterpleader is based upon in personam jurisdiction which extends only to the funds deposited in court." *See also Metropolitan Life Ins. Co. v. Enright*, 231 F.Supp. 275, 278 (S.D.Cal.1964) ("no jurisdiction in interpleader to grant judgment in personam as to subject matter apart from that deposited in court").

■■■ One district court in this circuit, though, has taken a broader view. *Bell v. Nutmeg Airways Corp.*, 66 F.R.D. 1 (D.Conn.1975). In that case, an interpleader action brought under 28 U.S.C. § 1335, the court considered, and rejected, a motion to dismiss a counterclaim brought by a defendant, declining to follow several Tenth Circuit decisions which were "based on the assumption that the interpleaded fund constitutes the exclusive subject matter of the complaint and that where the plaintiff disclaims any interest in the fund, he simply is not in an adversary relationship to the defendant-claimants." 66 F.R.D. at 3. Rather, the court said, "[n]othing in [Fed.R.Civ.P. 13] can be read as a bar to the filing of either compulsory or permissive counterclaims in interpleader actions. Nor are there any serious policy considerations which militate against the maintenance of such claims." *Id.* at 4.[4] The leading commentary agrees with

---

**2.** Compare the erroneous statement of Tercer's complaint in 95 Civ. 1011 to the effect that the present action (94 Civ. 0389) is brought pursuant to Fed.R.Civ.P. 22. (Complaint (95 Civ. 1011), ¶ 4.) There are differences between interpleader actions brought under 28 U.S.C. § 1335 and those brought under Rule 22, not least in the bases for subject matter jurisdiction. *See* 7 Wright, Miller & Kane, *Federal Practice & Procedure*, § 1703 (1986).

**3.** Bridgeport is a Michigan corporation with its principal place of business in Michigan. (Answer of Bridgeport, ¶ 2.) Tercer is a California corporation with its principal place of business in California. (Complaint, ¶ 3, admitted in Answer [of Tercer], ¶ 3.)

Priority is also a California corporation with its principal place of business in California. (Complaint, ¶ 1.) Thus, it does not appear that the Court would have subject matter jurisdiction over this action were it brought under Fed. R.Civ.P. 22. 7 Wright, Miller & Kane, *Federal Practice & Procedure*, at 498 (§ 1703) (1986) ("[R]ule interpleader requires complete diversity of citizenship between the stakeholder and the claimants; statutory interpleader is satisfied by minimal diversity between or among the claimants.").

**4.** The court did point out that, in the case of a counterclaim "based upon an independent transaction or occurrence and ... thus permissive, the requirement of an independent basis of jurisdiction would be applicable." *Id.* (footnote omit-

the *Bell* decision. "The better approach is to allow the assertion of a counterclaim in accordance with the principles of Rule 13 and rely on the separate trial mechanism to furnish a corrective when the counterclaim would unduly complicate the interpleader proceeding." 7 Wright, Miller & Kane, *Federal Practice & Procedure*, at 592 (§ 1715) (1986).

Cross-claims in interpleader actions brought under 28 U.S.C. § 1335 present a different problem. In such an action, defendants-claimants may be served "where the claimants reside or may be found." 28 U.S.C. § 2361. *See Great Western Cities, Inc. v. Curtis*, 588 F.Supp. 73, 76 (S.D.N.Y. 1984) (Weinfeld, J.); 7 Wright, Miller & Kane, *Federal Practice and Procedure*, at 557 (§ 1711) (1986). Thus, it is questionable whether a defendant-claimant, brought into a statutory interpleader action in a forum in which he is amenable to service only because of the nationwide service provision of 28 U.S.C. § 2361, can be subject to a cross-claim. *See Great Western, id.*; 7 Wright, Miller & Kane, *Federal Practice & Procedure*, at 596–98 (§ 1715) (1986). The last mentioned authority, however, suggests a "sensitive and flexible approach" as "highly desirable." *Id.* at 598.

> [A]n inflexible rule prohibiting the assertion of cross-claims in actions under the act ignores the desirability of adjudicating these claims in conjunction with the interpleader in a single action when they are closely related to the original dispute over the stake. Indeed, this is precisely the type of situation that has motivated the federal courts to develop the doctrines of ancillary and pendent jurisdiction—the need for a mechanism to achieve the efficiency of adjudicating similar claims in one action without running afoul of subject matter jurisdiction limitations. There is no reason why this philosophy should not

be applied to closely related cross-claims in actions under the interpleader statute. Certainly nothing in the statute itself prohibits employing what in effect is a notion of ancillary personal jurisdiction.

*Id.* (footnotes omitted). Professor Chafee is cited as supporting this view, at least "in a few cases where the speedy administration of justice will be clearly promoted without serious injury to the objecting nonresident." *Id.* (quoting Zechariah Chafee, Jr., *Broadening the Second Stage of Federal Interpleader*, 56 Harv.L.Rev. 929, 938 (1943)).

### 3.

How should all of this be applied in the present case? That requires some consideration of what is, or has been attempted to be put, at issue. In general, the dispute centers on the ownership of copyrights in musical compositions by one George Clinton, said to be "a professional musician based in Michigan, who was a major figure in the 'funk' music business." ("Cross–Claim Against [Tercer]" portion of Answer of Bridgeport, ¶ 7.) Priority "has released and is releasing into the marketplace recordings containing musical compositions created many years ago by ... George Clinton...." (Complaint, ¶ 8.) Priority commenced this action to obtain a determination as to whom royalty payments and accountings due under 17 U.S.C. § 115 should be made.

Unfortunately, a pervasive problem throughout the papers submitted by the parties has been a lack of clarity as to precisely which compositions of George Clinton are at issue. The pleadings refer to three groups of such compositions.

First, there are the compositions set forth on the three-page list annexed to the September 9, 1993 letter of Neville L. Johnson to Steve Dreth annexed as Exhibit A to the Complaint.[5]

---

ted). Such an independent basis exists, even apart from federal question jurisdiction, for a counterclaim by Bridgeport, a Michigan corporation with its principal place of business in Michigan, against Priority, a California corporation with its principal place of business in California. *See* n. 3, *supra*.

5. For the sake of clarity, the first compositions listed on each of the three pages of the list (taken in the order in which the pages are included in Exhibit A to the Complaint as filed) are, respectively, "Get Dressed," "America Eats It's [sic] Young," and "Swing Down Sweet Chariot." There appear to be 167 works listed but the typography and the nature of some of the titles

Second, there are the compositions identified in paragraph 6 of the "Counterclaim Against [Priority]" portion of the Answer of Bridgeport.[6]

Third, the "Cross–Claim Against [Tercer]" portion of the Answer of Bridgeport speaks, collectively, of a group of compositions of George Clinton described as the "Malbiz copyrights" ("Cross–Claim Against [Tercer]" portion of Answer of Bridgeport, ¶¶ 10, 17, 18, 19, 21), to which Bridgeport asserts rights superior to Tercer (or its principal, Nene Montes). (*Id.* ¶ 19.)

In or about April of 1992, Bridgeport recorded in the Copyright Office an "agreement" dated March 4, 1982, and an addendum to that "agreement" to be effective also on March 4, 1982. (*See* Order at 3–5; copies of such recorded documents are annexed as Exhibit 1 to the Answer of Bridgeport.) The "agreement" (Ex. 1 to Answer of Bridgeport, Bates No. 322) identifies nine compositions of George Clinton. The addendum (*id.*, Bates Nos. 323–324) appends an Exhibit "A" (*id.*, Bates Nos. 325–326) consisting of a two-page list of compositions of George Clinton, and an Exhibit "B" titled "Transfer of Copyright" (*id.*, Bates Nos. 327–328) which is followed by a one-page list titled "Exhibit 'B'" (*id.*, Bates No. 329) of compositions of George Clinton. Such two-page list and one-page list of compositions together comprise the same three-page list annexed (and retitled "Exhibit 1") to the letter from Neville L. Johnson to Steve Dreth which is annexed as Exhibit A to the Complaint, described above. According to Priority, the "Malbiz Catalog" (which the Court assumes to mean the same thing as the "Malbiz copyrights" referred to in the Answer of Bridgeport) consists of the compositions of George Clinton listed on the two- and one-page lists just described, *i.e.*, the three-page list annexed to the letter annexed as Exhibit A to the Complaint. (See Aff. James E. Daniels, Esq., May 5, 1995, ¶ 2.[7])

The Court will hereinafter refer to such works as the "Malbiz Catalog."

Priority, however, did not commence this action to determine adverse claims to the *entire* Malbiz Catalog. The Complaint alleges that Priority "has released and is releasing into the marketplace recordings containing musical compositions created many years ago by one George Clinton" (Complaint ¶ 8) without specifically identifying those compositions. In response to the Court's request at the April 14, 1995 oral argument of Bridgeport's motion for reconsideration or reargument, however, Priority has now, at the Court's request, provided "a listing of all songs used by Priority to which competing claims are asserted by defendants [Bridgeport] and [Tercer]." (Daniels Aff., May 5, 1995, ¶ 1.) Exhibit 1 to the Daniels Affidavit "identifies all the Malbiz songs used by Priority, whether in their entirety or through sampling uses." (*Id.*, ¶ 3.) There appear to be 39 works on this list, all of which are part of the Malbiz Catalog.

The Daniels Affidavit also annexes, as Exhibit 5, a list of seven "Non–Malbiz Songs" to which, according to Mr. Daniels, "Bridgeport asserts rights which defendant Tercer does not dispute. These songs, known as the Ohio Players music, are not in the Malbiz Catalog." (Daniels Aff., ¶ 7.)

The Daniels Affidavit also annexes, as Exhibit 6A, a list of four albums (and constituent songs) "royalties generated by Priority's use of songs on [which] four albums ... have not been paid into the Court registry for the reason that advances against royalties made by Priority to Tercer have not yet been recouped and therefore no payments made." (Daniels Aff., ¶ 8.)[8] Priority views royalties on its uses of the songs on the four albums as in dispute, even though royalties have not been paid into Court, presumably because,

---

make it impossible to be certain of the exact number.

**6.** There appear to be 28 individual works identified, from four albums. They appear to *partially* overlap the compositions identified on the three-page list annexed to Exhibit A to the Complaint.

**7.** Mr. Daniels is Priority's counsel. His May 5, 1995 affidavit was filed at the request of the Court, as described below.

**8.** The Daniels Affidavit was corrected by Mr. Daniels letter to the Court of May 26, 1995, substituting Exhibit 6A for Exhibit 6 originally annexed to the affidavit. The Court accepts the correction.

upon future sales of works embodying Priority's uses, the time will come when there will be royalties and accountings due under 17 U.S.C. § 115, the right to which will be in dispute. The four albums listed on Exhibit 6A to the Daniels Affidavit appear to be the same as those referred to in paragraph 6 of the "Counterclaim Against [Priority]" portion of the Answer of Bridgeport, and the individual songs identified in that paragraph of the Answer of Bridgeport are listed on Exhibit 6A to the Daniels Affidavit.

Finally, Bridgeport has suggested that other Clinton compositions, apparently not a part of the Malbiz Catalog or included in the four albums identified in Exhibit 6A to the Daniels Affidavit, should be considered to be at issue in this case. (*See* Transcript, April 14, 1995, at 45–47.)

■ Determination of the appropriate subject matter of this action comprises two inquiries: first, which works of George Clinton are to be included; and, second, which claims regarding such works are to be entertained.

### 4.

■ The Court concludes that the following works of George Clinton are the subject matter of the present action:

(i) The Malbiz Catalog, *i.e.*, those compositions which are listed on the three-page list appended to the September 9, 1993 letter of Neville A. Johnson to Steve Dreth which is annexed as Exhibit A to the Complaint as filed.

(ii) Those additional compositions which are listed on Exhibit 6A to the May 5, 1995 Affidavit of James E. Daniels (as corrected by Mr. Daniels' May 26, 1985 letter to the Court) as included in the four albums also listed on Exhibit 6A, which additional compositions are not included in the Malbiz Catalog.

No other compositions of George Clinton are a part of the subject matter of this action.

A number of considerations support the inclusion in the subject matter of this action of the compositions just identified, and no others.

In the first place, some clear definition of precisely which compositions of George Clin-

ton are the subject matter of this action is necessary for purposes of clarity.

In the second place, although Priority has not paid into Court royalties relating to the use of *all* of the compositions which make up the Malbiz Catalog, it makes a great deal of practical sense to deal with the entire Malbiz Catalog, which is in dispute between Bridgeport and Tercer, at the same time, rather than piecemeal. Questions have been raised concerning rights to compositions included in the Malbiz Catalog as to which Priority has paid royalties into Court which are common to—and the decision of which may well, under preclusion doctrines, affect—all of the compositions in the Malbiz Catalog. The entire Malbiz Catalog, the Court notes, was included in the documents recorded by Bridgeport in the Copyright Office in or about April of 1992 (Answer of Bridgeport, Ex. 1, Bates Nos. 320–329) which are considered in the Order.

The songs listed on Exhibit 6A to the Daniels Affidavit are at least largely included in the Malbiz Catalog, so that the considerations outlined in the previous paragraph apply, and a dispute between the parties as to whom royalties should be paid by Priority is extremely likely to arise in the near future, so that, even if certain songs on Exhibit 6A are not included in the Malbiz Catalog, practical considerations dictate that such songs be included in the subject matter of this action, rather than requiring Priority, in the near future, to commence another action and open another account with the Clerk.

### 5.

The inclusion of the works of George Clinton identified above as the subject matter of this interpleader action, of course, does not mean that any claim relating, in any way, to those works should, for that reason alone, be entertained in this action.

Priority's claim, seeking a determination of the party or parties to whom royalties and accountings are due, will, of course, be entertained.

■ Under *Bell,* (*see* § 2, *supra*), Bridgeport's counterclaims against Priority will also be entertained. Those counter-

claims—seeking (i) an injunction against future, and damages for past, use by Priority without a license of identified compositions of George Clinton which have been determined (see § 4, *supra*) to be included in the subject matter of this action, and (ii) relief for alleged willful infringement of Bridgeport's claimed copyrights in such compositions—appear to be compulsory under Fed.R.Civ.P. 13(a), and would, in any event, in the Court's view, come within its supplemental jurisdiction under 28 U.S.C. § 1367(a).

Bridgeport's cross-claims against Tercer seek (i) a declaratory judgment that its rights in the Malbiz Catalog are superior to those of Tercer (and Nene Montes), (ii) damages for infringement of Bridgeport's copyrights in the works in the Malbiz Catalog, and (iii) damages for willful infringement of the same works.

■■■ The first of Bridgeport's cross-claims, that seeking declaratory relief, represents in substance Bridgeport's claim in the second stage of any interpleader action. "The second stage of interpleader involves the determination of the respective rights of the claimants to the stake." 7 Wright, Miller & Kane, *Federal Practice & Procedure*, at 584 (§ 1714) (1986) (footnote omitted). It is, in other words, an integral part of the interpleader action commenced by Priority, and will, therefore, be entertained.

■■■ Bridgeport's other two cross-claims, alleging infringement of works in the Malbiz Catalog, raise a more difficult question. They cannot be compulsory, for "Rule 13(g), unlike Rule 13(a), always is permissive." 6 Wright, Kane & Miller, *Federal Practice & Procedure*, at 236 (§ 1431) (1989) (footnote omitted). Tercer, a California corporation with its principal place of business in California, was brought into this action in this District under a statute, 28 U.S.C. § 2361, allowing service "where the claimants reside or may be found," and Tercer has asserted that the Court does not have jurisdiction over Bridgeport's cross-claims against it. ([Tercer] Answer to Cross Claims ¶¶ 4, 30.)

■■■ Notwithstanding the foregoing, however, this case appears to be one of those "few cases where the speedy administration of justice will be promoted without serious injury to the objecting nonresident." Zechariah Chafee, Jr., *Broadening the Second Stage of Federal Interpleader*, 56 Harv. L.Rev. 929, 938 (1943). There is no subject matter jurisdiction bar preventing entertainment of the claims, for subject matter jurisdiction over these copyright infringement claims is conferred by 28 U.S.C. § 1338(a). The real issue is whether, as suggested in 7 Wright, Miller & Kane, *Federal Practice & Procedure*, at 598 (§ 1715) (1986) (quoted in § 2 *supra*), the Court should exercise, as to Bridgeport's infringement claims against Tercer, what that commentary calls "ancillary" jurisdiction (including "ancillary personal jurisdiction"). *Id.*

There appears to be good reason to do so in the particular circumstances of this case. Bridgeport and Tercer are, of necessity, compelled by Priority's claim to litigate ownership of, at the least, parts of the Malbiz Catalog in this action. As noted above, decision of questions as to the ownership of those parts of the Malbiz Catalog that Priority has put in issue may well affect the entire Malbiz Catalog, rights to all of which are claimed by both Bridgeport and Tercer. Thus, it appears to be economical and efficient to all concerned to consider the entire Malbiz Catalog in one action. Further, entertainment of Bridgeport's copyright infringement claims against Tercer will not unduly burden Tercer because Tercer has filed in this Court a separate action (95 Civ. 1011) in which it asserts, against Bridgeport (among others), its ownership, and Bridgeport's infringement, of the works constituting the Malbiz Catalog. Obviously, to succeed on that infringement claim, Tercer must establish its proprietorship of the copyrights in the works constituting the Malbiz Catalog. That issue, of course, is simply the mirror image of the same issue as to proprietorship raised by Bridgeport's cross-claims against Tercer. Put another way, Bridgeport could logically assert its cross-claims against Tercer as counterclaims in Tercer's infringement action.

For all of the foregoing reasons, it seems clear that every relevant consideration sug-

gests that all claims relating to the Malbiz Catalog be resolved in one proceeding.

**6.**

Turning now to Bridgeport's motion for reconsideration or reargument, it is necessary to clarify what was at issue on the motions of Bridgeport and Tercer for summary judgment.

Bridgeport's motion sought "summary judgement in its favor and against [Tercer]." (Notice of Motion, Mar. 4, 1994.) In the accompanying moving affidavit of John A. Knight, after distinguishing between the compositions referred to in its counterclaim against Priority and those referred to in its crossclaim against Tercer (Knight Aff., Mar. 3, 1994, ¶ 2), Mr. Knight, on behalf of Bridgeport, stated that Bridgeport seeks a ruling "[t]hat no material facts are at issue regarding Count I of Bridgeport's cross-claim against Tercer [concerning the Malbiz Catalog] and that Bridgeport is entitled to the $106,392.33 held by the Court" (*id.*, ¶ 3), as well as a ruling that any damages that may be due to Tercer for infringement are limited to infringing acts occurring in the three years prior to Tercer's filing of its answer. In connection with the motion, Mr. Knight indicated that the bases for Bridgeport's motion (apart from the limitations issue) were three-fold: (i) *res judicata;* (ii) "equitable estoppel and abandonment"; and (iii) "Bridgeport's registration of the Clinton publishing copyrights and the assignment of them to [Bridgeport]." (*Id.*, ¶ 3.)

Tercer's motion for summary judgment sought the following relief: (1) dismissal of Bridgeport's claim to the funds deposited with the Court and of Bridgeport's crossclaim against Tercer; (2) declaring that the documents annexed as Exhibit C to Tercer's motion (which documents are described in the Order at 3–5) are null, void and of no effect; (3) declaring that all licenses granted by Bridgeport arising from the documents annexed as Exhibit C to Tercer's motion are also null, void and of no effect; and (4)

referring the matter to the United States Attorney for prosecution. (Notice of Motion, Mar. 4, 1994, at 1–2.)

**7.**

■ The first of Bridgeport's grounds for claiming that the Order was in error centers on the proposition that (whatever the case may be as to Bridgeport's claims), Tercer did not establish its own claim to proprietorship of the Clinton compositions affected by the Order. That proposition is, in substance, correct.[9] The motions of Bridgeport and Tercer did not clearly raise the issue of Tercer's proprietorship of any Clinton compositions. Bridgeport sought summary judgment in its own favor, which motion was denied for the reasons set forth in the Order. Order at 8. Tercer's motion, on the other hand, sought dismissal of Bridgeport's claim to the funds deposited with the Court and declaratory relief with respect to the documents annexed as Exhibit C to Tercer's motion, which motion was granted. Order at 8. While the Court, in the Order, assumed the validity of the assignments under which Tercer claims, because no other party disputed them, the Order does not hold that Tercer has established its own proprietorship. The focus of the Order, because that is how the issues were framed by the motions, was on Bridgeport's proprietorship.

**8.**

The next ground on which Bridgeport seeks reconsideration or reargument is that it was precluded from establishing bases for its proprietorship other than the documents annexed as Exhibit C to Tercer's motion and discussed in the Order at 3–5. Again, as the issues were framed by the motions of Bridgeport and Tercer, such other alleged bases for Bridgeport's proprietorship of the Clinton works at issue on the motions were not before the Court, nor were they considered in the Order, and the Court does not preclude Bridgeport from establishing them, if it can.[10]

9. By so stating, the Court does not mean to imply that there is a defect in Tercer's claim to ownership.

10. That is not to say that Bridgeport has done so on its motion for reargument or reconsideration.

The affidavit of Joseph P. Della Maria, Jr., submitted on that motion, attempts to show such other bases for Bridgeport's claimed proprietorship, but that affidavit is not considered on the

## 9.

Next, Bridgeport claims that the Court failed to consider Bridgeport's equitable estoppel and abandonment defenses. In fact the Court did consider them, in the context of the issues raised by the motions of Bridgeport and Tercer. Order at 7 n. 1. For the reasons there set forth, Bridgeport's position was adequately considered in connection with the motions then before the Court.

## 10.

■ As noted, in the Order, the Court assumed the validity of the assignments under which Tercer claims, no dispute regarding such assignments having clearly been raised, and thus granted Tercer's motion for dismissal of Bridgeport's claim to the funds deposited with the Court and of Bridgeport's cross-claim against Tercer. On reconsideration, however, the Court recognizes that the grant of Tercer's motion should have been limited to what was put at issue on the motions before the Court, and, to this extent, the Order must be modified. Accordingly, Tercer's motion is granted to the extent that Bridgeport seeks to establish ownership of the Malbiz Catalog on the bases of claims of (i) *res judicata*, (ii) equitable estoppel and abandonment, or (iii) Bridgeport's registration in the Copyright Office of the documents discussed in the Order, at 3–5, but Tercer's motion is otherwise denied. Bridgeport thus remains free to demonstrate, if it can, other bases for its claim to proprietorship of the Malbiz Catalog.

## 11.

■ Priority has applied for an award of attorneys' fees to be paid from the funds on deposit with this Court. (*See* Statement of Interpleader Plaintiff in Support of Award of Attorneys' Fees, Feb. 10, 1994.) "A federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action, whether brought under Rule 22 or the interpleader statute, whenever it is fair and equitable to do so." 7 Wright, Miller & Kane, *Federal Practice & Procedure*, at 629–30 (§ 1719) (1986) (footnote omitted). Here, it is, in the Court's judgment, fair and

present motion for reconsideration or reargu-

equitable that Priority have an *interim* award of attorneys' fees: Priority is not only a stakeholder, but has also, at the Court's request, supplied information relating to the dispute between Bridgeport and Tercer that has been of substantial assistance to the Court. An *interim* award is appropriate since it is not clear at this point that Priority will not be called upon to participate further in this litigation.

Priority may accordingly submit to the Court, on notice to the other parties, an affidavit of services and a proposed order for payment to it, from the funds on deposit with this Court, of an *interim* award of attorneys' fees and costs.

## 12.

It has been suggested that this action, and Tercer's action against Bridgeport (95 Civ. 1011), also pending in this Court, be transferred to Hon. Manuel L. Real, of the United States District Court for the Central District of California, before whom apparently related litigation is pending (*see* Letter, Samuel Kramer, Esq. [counsel for Tercer] to Court, June 23, 1995.) This Court will transfer such actions to Judge Real, either upon stipulation of the parties approved by Judge Real, or upon request of Judge Real.

## 13.

Pending any possible transfer of this case (*see* § 12, *supra*), the parties may proceed with discovery relating to issues not already determined by the Order as modified and clarified by this Memorandum and Order. The reference to Magistrate Judge Dolinger remains in effect, and he may, in his discretion, bifurcate discovery between (i) discovery relating to ownership of the copyrights of the works at issue, and (ii) damages for infringement (postponing the latter), as well as set such discovery cutoff dates as he considers to be appropriate.

Prior to filing any dispositive motion, the party seeking to file such a motion shall outline the motion in a letter to the Court (not to exceed three pages) so that the Court can determine whether it should hold a con-

ment of the Order.

ference prior to the filing of the motion in order to clarify issues.

SO ORDERED.